STATE v. EUGENE SPEARS, JR., BOBBY HUBERT, WALTER LOUIS BIDGOOD, JR., AND BERT PARTLOW, JR.

(Filed 19 October, 1966.)

1. **Criminal Law § 71—**

Where the court finds upon competent supporting evidence that defendants' statements were made freely and voluntarily after they had been fully advised of their constitutional rights, such findings are conclusive and the admission of the statements in evidence will not be disturbed.

2. **Criminal Law § 159—**

Exceptions not discussed in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

3. **Criminal Law § 9—**

Where the perpetration of a felony has been entered upon, a person who, with full knowledge of the purpose of the actual perpetrators, aids and encourages the commission of the offense is guilty as a principal, and the effect of his acts in aiding and encouraging continues until he renounces the common purpose and makes it plain to the others that he does not intend to participate further.

4. **Criminal Law § 99—**

On motion to nonsuit, the evidence must be taken in the light most favorable to the State, and defendant's evidence is not to be considered except so much of defendant's evidence which is not in conflict with the State's evidence may be considered when it tends to explain or make clear the State's evidence.

5. **Safecracking § 2—** **Evidence held sufficient to sustain conviction of defendant as abettor of offense of attempted safecracking.**

The State's evidence tended to show that a safe had been removed from a building and was inside the fence surrounding the premises, that when defendant, in consequence of an invitation of a codefendant and a promise of a "cut", went to the scene with the others he knew that the safe had been stolen and that the parties intended to break open the safe and secure the contents, that defendant aided them in their common pur-

pose by helping to push the safe a distance of some 40 yards from the premises, that the efforts to break open the safe being unsuccessful, defendant and the others left, but that the next morning defendant and another walked down to the creek bed and looked at the safe, permitting an inference that defendant still expected to get a "cut" of the contents. *Held:* The evidence is sufficient to be submitted to the jury on the question of defendant's guilt as an aider and abettor. G.S. 14-89.1.

**6. Criminal Law § 96—**

Upon objection of one defendant, the court properly refuses . the . jury's request to take with them into the jury room a typewritten statement introduced in evidence, and such action by the court is not grounds for objection by another defendant, even though such other defendant consented that the jury might take such statement into the jury room.

**7. Criminal Law § 156—**

An assignment of error to the charge which assignment contains nothing but a reference to the page of the record where the portion of the charge objected to was set forth, is broadside and ineffectual.

APPEAL by defendant Walter L. Bidgood, Jr., from *McLean, J.,* 4 April 1966 Criminal Session of MECKLENBURG.

Criminal prosecution upon two indictments which were consolidated for trial. The first indictment charges that Eugene Spears, Jr., Bobby Hubert, Walter Louis Bidgood, Jr., and Bert Partlow, Jr., on 13 February 1966 did wilfully and feloniously by the use of an acetylene cutting torch, an axe, and a pick, attempt to unlawfully force open a safe used for storing valuables and $800 in money, the property of F & R Coal and Oil Company, a corporation. The second indictment charges that the same defendants on the same day did wilfully and feloniously by the use of an acetylene cutting torch, an axe, and a pick, force open a safe used for storing valuables and $800 in money, the property of F & R Coal and Oil Company, a corporation.

Each defendant was represented by separate counsel.

Pleas: Not guilty by all defendants. Verdicts: As to Eugene Spears, Jr., guilty of the charge of attempt to force open a safe, as charged in the bill of indictment; as to Bobby Hubert, not guilty; as to Walter Louis Bidgood, Jr., guilty of the charge of attempt to force open a safe, as charged in the bill of indictment; as to Bert Partlow, Jr., guilty of the charge of attempt to force open a safe, as charged in the bill of indictment. (The verdicts here set forth are taken from a copy of the minutes of the court certified by the assistant clerk of the Superior Court of Mecklenburg County, which is filed as an addendum to the record in this case.)

Judgments of imprisonment were imposed by the court on defendants Spears, Bidgood, and Partlow. From a judgment that he

be imprisoned for a term of not less than ten nor more than fifteen years, defendant Bidgood appeals to the Supreme Court.

*Attorney General T. W. Bruton, Assistant Attorney General William W. Melvin, and Staff Attorney Donald M. Jacobs for the State.*
*E. Clayton Selvey, Jr., for defendant Walter L. Bidgood, Jr., appellant.*

PARKER, C.J.  The State and defendants put on evidence. Defendant Bidgood assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence. The State's evidence, considered in the light most favorable to it, shows the following facts:

The F & R Coal and Oil Company had in its front office in a building located in the city of Charlotte a Class E Mosler burglary resistant type safe. All the daily receipts of this corporation for Friday, 11 February 1966, and Saturday, 12 February 1966, consisting of between $800 and $1,000 in cash money and about $3,600 in checks, were placed in this safe on Saturday night, 12 February 1966, and the safe and office were locked. About 7:15 a.m. on Sunday, 13 February 1966, J. E. King, a vice president of this corporation, went to the office of the corporation. Upon arrival he saw the safe had been removed. Small pieces of the concrete cap of the safe and small metal pieces of its top were scattered about on the ground about 100 yards behind the office. After the police came, King saw the safe which had been taken from the office of F & R Coal and Oil Company about 300 yards from the office on the bank of a creek behind the Queen City Foundry building which is across the street from the F & R Coal and Oil Company's office. The metal part of the safe had been cut up, it had been broken into, and the money and checks locked in it on the previous night had been taken and carried away. Defendant Partlow was an employee of F & R Coal and Oil Company, and came into its front office several times a day.

The State offered in evidence statements made by defendants Spears, Bidgood, and Partlow in each other's presence to police officer J. C. Wilkins. Defendants objected. The trial judge, in the absence of the jury, conducted a long preliminary inquiry as to the admissibility in evidence of these statements. The State presented the evidence of a number of police officers, and the above-named three defendants testified themselves and presented the testimony of Minnie Partlow and Joe Alice Partlow. The evidence was conflicting. The trial judge found as facts that the three above-named defendants had been fully advised of their constitutional rights be-

fore any of them made any statement, and concluded that the statements made by each defendant in each other's presence were freely and voluntarily made and were admissible in evidence, but were not admissible in evidence against defendant Hubert who was not present when the statements were made. The judge's findings of fact are amply supported by competent evidence, and his findings of fact support his conclusion and his ruling that the statements were admissible in evidence against the three above-named defendants, and, consequently, his ruling will not be disturbed on appeal. S. v. Rogers, 233 N.C. 390, 64 S.E. 2d 572, 28 A.L.R. 2d 1104; S. v. Outing, 255 N.C. 468, 121 S.E. 2d 847, cert. den. 369 U.S. 807, 7 L. Ed. 2d 555. Defendant Bidgood has not brought forward and discussed in his brief his assignment of error to the admissibility in evidence of these statements, and this assignment of error is taken as abandoned by him. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810.

The testimony of police officer J. C. Wilkins is in substance as follows: Defendants Spears, Bidgood, and Partlow made statements in each other's presence and in his presence. The statements were typed, signed by each defendant, and are in substance: On Saturday night, 12 February 1966, Walter Weddington and an unknown boy were at Partlow's house. The three of them left his house and went to the building of the F & R Coal and Oil Company, they climbed over the fence, and Walter Weddington cut open with an axe the door of the building. They went in and pushed the safe in the front office down the steps to the outside. Then the three of them went across the street to the Queen City Foundry building, got some hand trucks, brought them back to the premises of the F & R Coal and Oil Company, and put the safe on these hand trucks. The three of them then left and went back to Partlow's house. In his house were defendants Spears and Bidgood. Weddington told Spears and Bidgood they had a safe and wanted them to help. Whereupon, Spears, Bidgood, Partlow, and Weddington went down to the building of the F & R Coal and Oil Company. Spears, Weddington, and Partlow went in the gate, and Bidgood stayed on the outside of the gate. Weddington took an axe and tried to beat the lock off the front gate. Partlow went inside and got the keys to unlock the gate. Spears pulled and Bidgood, Partlow, and Weddington pushed the safe to the edge of the railroad near the building of the Queen City Foundry. Then all of them left and went to defendant Hubert's house. Bidgood left and went to work. Spears, Partlow, Hubert, and Weddington then went to Partlow's house and took a drink of whisky. Then all of them left, accompanied by an unknown boy, and went back to where they had left the safe. The five of them pushed the

safe on the railroad down on a creek bank. Weddington tried to cut the safe open with an axe, and the boy was using a pick on it. They could not get in the safe. Weddington said they needed some torches. Partlow said there were some torches in the back of the Queen City Foundry. Partlow, Weddington, and the unknown boy went to the Queen City Foundry building, got some torches, and came back. This unknown boy told them to be careful with the tanks, they might blow up. Then Spears grabbed an, axe and on the third blow the axe glanced off and hit his toe. He left and went home. They left at the safe Partlow, Weddington, Hubert, and this unknown boy. They kept beating on the safe. Weddington tried to cut it open with the torches, but he could not do so because of cement on it. Partlow left and went home. Later that night the unknown boy came to his house and gave him some money. He told him that was his part, about all the money was burned, and the police got it. The following morning Bidgood came by the house as he got off work. Later, Partlow and Bidgood left and walked down and looked at the safe. Bidgood and Spears did not get any of the money.

Defendants offered evidence. Defendant Hubert testified in substance as follows: On Saturday night, 12 February 1966, he was home in bed. Partlow, Spears, Bidgood, Weddington, and another boy came to his house and woke him up. Weddington asked him if he wanted to make some money, saying they had a game down at Partlow's house. He got his dice and cards and went there. When he arrived, he looked around and there was not any money there, so he told Partlow, "Ain't no money down here," and said, "I am going back home." The unknown boy said, "The money is down the street." They walked down the street, turned down the railroad, walked down the railroad, and there was a safe sitting beside the bank. They rolled it down the hill. Partlow said there were some torches in a building across the street. Hubert said he and Spears were not going to get any torches. He and Spears walked down the railroad, went up Graham Street, and came back down the railroad. By that time they were back with the torches. Spears walked down the hill to where they were working on the safe with torches and beating on it. He came back and said he had cut his foot. At that time, he, Partlow, and Weddington left and went up the street. He never placed his hand on the safe, and had nothing to do with trying to break it open.

Bidgood, testifying in his own behalf, stated in substance: He, Spears, and Hubert were at Partlow's house. There was some conversation about money. They said they had some money. Walt Bellamy approached him about this. His cuff links were messed up, and he asked him where he had been. Hubert told them to go with him.

They left and went to the F & R Coal and Oil Company. He never went inside the building or its enclosure. When they reached the premises of the F & R Coal and Oil Company, he saw a safe inside the fence. Bellamy pointed to the safe and said, "We have got it out this far and if you will push it up the street, I will give you a cut." He replied, "No, I am not going to get involved." Bellamy said, "If you don't get in and help, I am going to get you in it anyhow." As a result of this conversation, he helped. When they got the gate open, the safe was pushed out in front of the premises, and he helped push it down by the paper house. He said he was not going to help any further, and that he was going. All of them left the place where the safe was. He never went back that night to where the safe was. He never opened the safe and he did not get any of the materials to open the safe. He said on cross-examination that he helped roll the safe about 40 or 50 yards before leaving. He did not know exactly what was meant by giving him a cut, and his intention was not to get a cut; he pushed the safe because of Bellamy's threat.

Defendant Partlow testified in his own behalf in substance as follows: He, Spears, and Bidgood were at a house and Weddington and another guy came in. They told Spears, Bidgood, and him to come with them. They started down the street, and when they got down the street they saw a safe on a hand truck. They asked him to help push it up the street, but he refused to do so. They left and went back to the house. They left his house and went to Hubert's house. After awhile Weddington and another guy came in and asked where Hubert was. They said he was upstairs in bed. After awhile Hubert came downstairs with some cards and dice. They then went to Partlow's sister's house. They left there and he, Bidgood, Spears, Hubert, and Weddington went on up the railroad. A guy with them said, pointing to the safe, "There is where the money is at. . . . You come and help us." Spears went down to the bank of the creek, and after awhile he came back and said he had cut his foot. He never placed his hands on the safe. He said on cross-examination in substance: One of the men who had been rolling the safe down the track gave him a bunch of money amounting to $191. This man told him this money was no good and that he was going to flush the money down the stool, and he told him to give it to him. He denied that he was at his sister's home early one morning washing some of this money off and hanging it on a line to dry. He does not know whether the money was burned or not. He had seen Weddington have this money before. He did not burn the pocketbook.

It seems from reading the record that Walter Weddington is also called Walter Bellamy. We are confirmed in our belief by the fol-

lowing statement in the defendant's brief: "There were two of the participants named 'Walter,' Walter L. Bidgood, Jr., and another fellow named Walter Weddington (also referred to as 'Walter Bellamy')."

Defendant Bidgood states in his brief: "The evidence presented by both the State and the defendant is basically the same." Defendant Bidgood further states in his brief: "There is never any evidence to the effect that Walter L. Bidgood, Jr., had anything to do with the opening of the safe, that his participation was limited to the extent that he helped move the safe from one spot to another, and that at most would be guilty of larceny of the safe and not as *(sic)* safe cracking or attempted safe cracking."

The two indictments here charge a violation of G.S. 14-89.1, which reads:

> "Any person who shall by the use of explosives, drills, or other tools unlawfully force open or attempt to force open or 'pick' the combination of a safe or vault used for storing money or other valuables, shall, upon conviction thereof, receive a sentence, in the discretion of the trial judge, of from ten years to life imprisonment in the State penitentiary."

In *S. v. Hart,* 186 N.C. 582, 120 S.E. 345, Stacy, J. (later C.J.), speaking for the Court, said:

> "An aider and abettor is one who advises, counsels, procures, or encourages another to commit a crime, whether personally present or not at the time and place of the commission of the offense."

In *S. v. Burgess,* 245 N.C. 304, 96 S.E. 2d 54, Denny, J. (later C.J.), said:

> "In 22 C.J.S., Criminal Law, section 79, page 143, it is said: 'A person is a party to an offense if he either actually commits the offense or does some act which forms a part thereof, or if he assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof. To constitute one a party to an offense it has been held to be essential that he be concerned in its commission in some affirmative manner, as by actual commission of the crime or by aiding and abetting in its commission and it has been regarded as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent.' "

The *Burgess* decision was filed 11 January 1957. The statement quoted in that opinion appears in 22 C.J.S., Criminal Law, § 79, pp. 237-8, in the volume of C.J.S. copyright 1961. The opening sentence of § 79, p. 237, in the 1961 edition of 22 C.J.S. is as follows: "It is a general rule under the common law that one is not liable for the criminal acts of another in which he did not participate directly or indirectly."

In 21 Am. Jur. 2d, Criminal Law, § 120, it is stated:

> "A principal in a crime must be actually or constructively present, aiding and abetting the commission of the offense. It is not necessary that he do some act at the time in order to constitute him a principal, but he must encourage its commission by acts or gestures, either before or at the time of the commission of the offense, with full knowledge of the intent of the persons who commit the offense. He must do some act at the time of the commission of the crime that is in furtherance of the offense."

Where the perpetration of a felony has been entered on, one who had aided or encouraged its commission cannot escape criminal responsibility by quietly withdrawing from the scene. The influence and effect of his aiding or encouraging continues until he renounces the common purpose and makes it plain to the others that he has done so and that he does not intend to participate further. *People v. Brown,* 26 Ill. 2d 308, 186 N.E. 2d 321; *Karnes v. State,* 159 Ark. 240, 252 S.W. 1; 22 C.J.S., Criminal Law, § 89; 21 Am. Jur. 2d, Criminal Law, § 120; 1 Wharton's Criminal Law and Procedure, by Anderson, 1957, § 110, pp. 238-9.

This is said in 22 C.J.S., Criminal Law, § 89, p. 268: "Where non-liability as aider and abettor is based on the ground that accused had no prior knowledge of any plan to commit a crime and that his assistance after acquiring such knowledge was under duress, it is essential that he cease to act in complicity with others as soon as he acquires knowledge of the criminal character of their actions."

It is familiar learning that on a motion for judgment of nonsuit the State is entitled to have the evidence considered in its most favorable light, and defendant's evidence, unless favorable to the State, is not to be considered, except when not in conflict with the State's evidence it may be used to explain or make clear the State's evidence. *S. v. Roop,* 255 N.C. 607, 122 S.E. 2d 363. Applying this rule to the evidence here, it would permit a jury to find the following:

Defendant Partlow, Walter Weddington (also called Walter Bel-

lamy), and an unknown boy went to the building of the F & R Coal and Oil Company, climbed over the fence, and Weddington cut open with an axe the door of the building. The three went inside and pushed the safe in the front office down the steps outside the building. The three of them then went across the street to the Queen City Foundry building, got some hand trucks, brought them back to the premises of the F & R Coal and Oil Company, and put the safe on these hand trucks. The safe was inside the fence surrounding the F & R Coal and Oil Company's premises. The three then left and went back to Partlow's house. In Partlow's house were defendants Spears and Bidgood. Weddington told Spears and Bidgood they had a safe and wanted them to help. Spears, Bidgood, Partlow, and Weddington went to the building of the F & R Coal and Oil Company. When they reached the premises of the F & R Coal and Oil Company, Bidgood saw the safe inside the fence. Bellamy pointed to the safe and said, "We have got it out this far and if you will push it up the street, I will give you a cut." Weddington took an axe and tried to beat the lock off the front gate. Partlow went inside and got the keys and unlocked the gate. Spears pulled and Bidgood, Partlow, and Weddington pushed the safe to the edge of the railroad near the building of the Queen City Foundry. All of them left and went to defendant Hubert's house. Bidgood left and went to work. Spears, Partlow, Hubert, and Weddington then went to Partlow's house and took a drink of whisky. Then all of them left, accompanied by an unknown boy, and went back to where they had left the safe. The five of them pushed the safe on the railroad down on a creek bank. Weddington tried to cut the safe open with an axe, and the boy was using a pick on it. Partlow, Weddington, and the unknown boy went to the Queen City Foundry building, got some torches, and came back to the safe. These people kept beating on the safe with an axe, and Weddington tried to cut it open with the acetylene cutting torches. Finally, they got the safe open and took out of it its contents consisting of money and checks. When Bidgood went to the scene with the other men, he knew that the safe had been stolen and that the purpose of these other men was not to steal the safe, but to break open the safe and secure the contents therein. The reasonable inference is that when Bidgood went to the scene he entered into the common purpose or design of these men to break open the safe and secure the contents thereof, and aided them in their common purpose or design by helping push the safe 40 or 50 yards from the premises of the F & R Coal and Oil Company, and expected to get a "cut" of the contents of the safe when it was broken open. It appears that he left Hubert's house and

went to work, but a jury could find that he did not renounce the common purpose and make it plain to the others that he had done so and did not intend to participate further. The next morning Partlow and Bidgood walked down to the creek bank and looked at the safe. It is a reasonable inference that a jury can draw that by going to the scene the next morning where the safe had been broken into he still hoped by reason of his help in pushing the safe 40 or 50 yards to get a "cut" of the contents of the safe after it had been broken into. The evidence was sufficient to carry the case to the jury, and the judge properly overruled defendant's motion for judgment of nonsuit at the close of all the evidence.

After the court's charge, the jury retired to their room. Later they returned to the courtroom and asked the court to permit them to take into the jury room with them the typewritten statement made by defendants Spears, Bidgood, and Partlow to police officer J. C. Wilkins, which had been introduced in evidence, and marked State's Exhibit #2. Defendant Partlow objected to the jury's request being granted. Defendant Spears said he put on no evidence, and he thought the granting of the jury's request "might be prejudicial to" him. Defendant Bidgood said he had no objection. The court refused the jury's request, and defendant Bidgood assigns this as error. This assignment of error is overruled on authority of *S. v. Caldwell*, 181 N.C. 519, 106 S.E. 139.

Defendant has five assignments of error to the charge. All of these are identical, except each one has a different numbered exception and a different numbered page of the record. Assignment of error No. 7 is typical of the other four, and reads: "7. The action of the court in charging the jury. (DEFENDANT'S EXCEPTION No. 7) (R p 89)." The assignments of error to the charge are broadside and ineffectual, and are overruled. *S. v. Douglas, ante,* p. 267, 150 S.E. 2d 412; 1 Strong's N. C. Index, Appeal and Error, § 24.

All defendant's assignments of error are overruled. In the trial we find

No error.