## STATE v. CALVIN MABRY.

(Filed 20 January, 1967.)

**1. Criminal Law § 99—**

Contradictions and discrepancies in the State's evidence are for the jury to resolve and do not warrant nonsuit.

**2. Criminal Law § 101—**

If there be any evidence tending to prove the fact in issue or which reasonably conduces to its conclusion as a fairly logical deduction and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to a jury.

**3. Rape § 18—**

Evidence tending to show that defendant, a grown man, assaulted an eleven year old female, struck her on the head with some object, and threatened her life, partially undressed her, and that after the assault her underclothing had blood on it, *held* sufficient to be submitted to the jury in a prosecution under G.S. 14-22.

**4. Criminal Law § 154—**

    An assignment of error which does not disclose within itself the specific question sought to be presented, is ineffectual.

**5. Criminal Law § 162—**

    The exclusion of evidence cannot be held prejudicial when the record fails to show what the witness would have answered had he been permitted to testify.

APPEAL by defendant from *Hobgood, J.,* August 1966 Criminal Session of ALAMANCE.

Criminal prosecution for assault with intent to commit rape. G.S. 14-22.

Plea: Not guilty. Verdict: Guilty as charged.

From a judgment of imprisonment, defendant appeals.

*Attorney General T. W. Bruton and Assistant Attorney General James F. Bullock for the State.*

*M. Glenn Pickard for defendant appellant.*

PER CURIAM. Defendant assigns as error the denial by the court of his motion for judgment of compulsory nonsuit made at the close of the State's case, and the denial of a similar motion by him made at the close of all the evidence. Both the State and the defendant presented evidence.

The State's evidence, considered in the light most favorable to it, and giving it the benefit of every inference reasonably to be drawn from the evidence, and the defendant's evidence favorable to the State *(State v. Spears,* 268 N.C. 303, 150 S.E. 2d 499), would permit a jury to find the following facts: Defendant was married to Jo Ellen Mabry's mother, but the evidence does not show when the marriage took place. Jo Ellen Mabry's mother had three children: a girl 17 years of age, who is not defendant's daughter; a girl 12 years of age, who is defendant's daughter; and Jo Ellen Mabry, 11 years of age, who is not defendant's daughter. Since 29 February 1966 defendant and his wife were living separate and apart. Jo Ellen Mabry was living with her mother and two sisters. Prior to 18 June 1966 while he was living apart from his wife, defendant came to his wife's home when he was drinking, and said he was going to give the 12-year-old girl, who was his daughter, and Jo Ellen Mabry the sum of $10. On 18 June 1966 Jo Ellen Mabry saw defendant in the garden back of the Mabry home talking with "Foots" Barber. She went down to the garden where he was, and asked him if he was going to give them the money he had promised. He told her to come with him to the store, and get the change. The

STATE *v.* MABRY.

store is on the other side of the street from the Mabry home. She
went with him. When they came to the store, he told her to come
and go to the mill with him, that he had to talk to his "bossman."
They went down the road to a dirt road which turns off to the mill.
When she was going to turn down the dirt road to the mill, he told
her to come with him and look at Uncle Walt's pigs. Uncle Walt
was an uncle of hers who had some pigs. The pigs were down on
the left but not too far from the dirt road. When they came to the
pigpen, he told her to come and go through the woods to the mill.
There was no path between the pigpen and the mill. She was bare-
footed. She told him that she could not go, that she was afraid she
would get bitten by a snake. He told her that nothing was going to
hurt her. When she was going through the woods, he grabbed her,
put his hand over her mouth, and told her if she hollered he would
kill her. She was wearing cut-off overalls, panties, and a poor-boy
shirt. A poor-boy shirt is a plain old knitted shirt. He pulled her
down on the ground and was holding her on the ground. He was
down on his knees, and he pulled her overalls and panties to the
bottom of her feet. It is true that she testified on cross-examination
in substance: He must have pulled her pants off. She could remember
nothing until she got back to the cafe. She does not remember put-
ting her pants back on. She testified: "I didn't holler; he said if I
hollered he would kill me. I didn't scream. I couldn't do anything
to resist him." He struck her head. She did not know what he struck
her head with. The next thing she remembers was when they got
back to the cafe. Defendant was with her. When she came to, her
head felt like she was crazy, and her eyes felt like they were crossed.
Defendant gave her a quarter. She started running, threw the quarter
at him, and went home. She told her mother what had occurred,
and they took her to the hospital. When she reached home, her nose
was bleeding, her eyes had blood in them at each corner and were
red. Her head was hurting. Defendant's fingerprints were on her left
arm where he held her. Her underpants had blood on the top of
them. She then went to the sheriff's office, and told them what had
happened.

A witness for the State, Loraine McKenny, was at Jo Ellen
Mabry's home on 18 June 1966 when Jo Ellen Mabry came in.
When she came in, half way up her nose was swollen and blue, her
forehead was blue, and her eyes were badly bloodshot. There were
also bruises and fingerprints on her arm.

Defendant's evidence was to this effect: He was with Jo Ellen
Mabry at the pigpen on 18 June 1966. While he was with her that
day, he never put his hands on her, and never assaulted her. He
has never had any trouble with Jo Ellen Mabry.

This Court said in *S. v. Gammons,* 260 N.C. 753, 133 S.E. 2d 649:

"To convict a defendant on the charge of an assault with intent to commit rape the State must prove not only an assault but that defendant intended to gratify his passion on the person of the woman, and that he intended to do so, at all events, notwithstanding any resistance on her part. *State v. Burnette,* 242 N.C. 164, 172, 87 S.E. 2d 191. It is not necessary to complete the offense that the defendant retain the intent throughout the assault, but if he, at any time during the assault, have an intent to gratify his passion upon the woman, notwithstanding any resistance on her part, the defendant would be guilty of the offense. *State v. Petry,* 226 N.C. 78, 81, 36 S.E. 2d 653. Intent is an attitude or emotion of the mind and is seldom, if ever, susceptible of proof by direct evidence, it must ordinarily be proven by circumstantial evidence, *i. e.,* by facts and circumstances from which it may be inferred. *State v. Petry, supra; State v. Adams,* 214 N.C. 501, 199 S.E. 716."

Any contradictions and discrepancies in the State's case are for the jury to resolve, and do not warrant the granting of a motion for compulsory judgment of nonsuit. *S. v. Carter,* 265 N.C. 626, 144 S.E. 2d 826; *S. v. Simpson,* 244 N.C. 325, 93 S.E. 2d 425.

It is a general rule in this jurisdiction that if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to a jury. *S. v. Tessnear,* 254 N.C. 211, 118 S.E. 2d 393; Supplement to 1 Strong's N. C. Index, Criminal Law, § 101. Following that general rule, the State's evidence and the defendant's evidence favorable to it was sufficient to permit a jury to find that the prosecutrix was 11 years old and was in the hands of a grown man, and that defendant intended at some time during the felonious assault to gratify his passion on the person of Jo Ellen Mabry, and that he intended to do so, at all events, notwithstanding any resistance on her part; and that she resisted all that she could under the circumstances, or that if she did not resist that she had been overcome by fear and submitted without consent, and such a consent from fear of personal violence is void and no consent at all. *S. v. Carter, supra; S. v. Miller,* 268 N.C. 532, 151 S.E. 2d 47. The State's evidence and defendant's evidence favorable to it was sufficient to carry the case to the jury on the charge in the indictment, and the court properly overruled defendant's motion for judgment of compulsory nonsuit.

Defendant assigns as error that the court deprived him of an opportunity to show that the prosecuting witness was testifying in furtherance of enmity of her mother against the defendant. The assignment of error does not show specifically what question . is intended to be presented for consideration without the necessity of going beyond the assignment of error itself. There is a reference in this assignment of error to the record page where the asserted error may be discovered. The assignment of error is ineffectual to bring up for review by this Court the trial judge's rulings sustaining the objections to the questions asked by defendant's counsel on cross-examination. *In the Matter of the Will of Adams,* 268 N.C. 565, 151 S.E. 2d 59; *S. v. Douglas,* 268 N.C. 267, 150 S.E. 2d 412. However, when we search the record, it shows this in respect to questions asked by defendant's counsel:

"Q. Did you hear her make a statement to him that she was going to get him one way or another?

"THE COURT: OBJECTION: SUSTAINED, that is not germane to the issue before this jury.

"DEFENDANT'S EXCEPTION No. 6

"Q. Did you discuss this evidence with your mother?

"MR. ENNIS: OBJECTION.

"Q. You talk with your mother?

"THE COURT: SUSTAINED.

"DEFENDANT'S EXCEPTION No. 7."

The record does not show what the answers of the witness would have been if she had been permitted to answer. Consequently, prejudicial error is not shown. *S. v. Poolos,* 241 N.C. 382, 85 S.E. 2d 342.

The other assignments of error have been carefully considered by the Court, and prejudicial error is not shown that would warrant a new trial.

Defendant has had a fair trial, free from error.

No error.