STATE OF NORTH CAROLINA v. GREG CONNORS

No. 724SC767

(Filed 20 December 1972)

**Burglary and Unlawful Breakings § 5; Safecracking— breaking and entering — safecracking — acting as lookout — sufficiency of evidence**

The evidence was sufficient for submission to the jury on issues of defendant's guilt of felonious breaking and entering and safecracking where it tended to show that defendant was asked if he wanted to "make some easy money," that defendant and three companions went to a grocery store, that defendant and one companion were told to go to the back corners of the store to serve as lookouts, that one companion went to the back and defendant went "to the other side of the store," that a second companion entered the store from the roof and attempted to open the safe while the third companion remained in the car, that the first companion was discovered by the owner outside the store at 4:00 a.m., that the owner took him inside

the store, where the owner was struck and rendered unconscious by the second companion, and that defendant later told the first companion that he had "got scared and left" the scene of the crimes, notwithstanding defendant testified that he had walked on past the corner of the store, hitchhiked away from the crime scene, and did not take part in the crimes.

APPEAL by defendant from *Rouse, Judge,* 1 May 1972 Session of SAMPSON Superior Court.

In two separate bills of indictment, proper in form, defendant was charged with (1) felonious breaking and entering and (2) safecracking. He entered a plea of not guilty as to each count, was found guilty as charged, and from judgment imposing prison term of not less than four nor more than five years, he appealed.

*Attorney General Robert Morgan by Assistant Attorney General Claude W. Harris, for the State.*

*Nance, Collier, Singleton, Kirkman & Herndon by Charles H. Kirkman for the defendant.*

BRITT, Judge.

Defendant's primary assignment of error is to the court's failure to grant his motions for nonsuit made at the close of the State's evidence and renewed at the conclusion of all the evidence.

It is elementary that upon a motion for nonsuit, all the evidence must be considered in the light most favorable to the State with every reasonable intendment thereon and every reasonable inference therefrom being resolved in the State's favor. *State v. Greene,* 278 N.C. 649, 180 S.E. 2d 789 (1971); *State v. Vincent,* 278 N.C. 63, 178 S.E. 2d 608 (1971); *State v. Bronson,* 10 N.C. App. 638, 179 S.E. 2d 823 (1971). Evidence in the instant case, considered in the light most favorable to the State tended to show:

At about 4 a.m. on 4 January 1971, one Joseph R. Nunnery, owner and operator of a grocery store in Clinton, North Carolina, drove up beside his store. As he sat in his car, Nunnery saw a man who later identified himself to Nunnery as Richard W. Bullock run from behind the store. Nunnery got out of his car, ran around to the front of the store and found Bullock hidden in some bushes. Nunnery had his hands in his

topcoat to give the impression that he had a gun. Threatening to "drop" Bullock if he ran, Nunnery took him through the back door into the store. In the front of the store Nunnery saw a hole in the ceiling where an air conditioning duct had been torn down. Nunnery entered his office to get a gun kept in his desk and there saw that someone had tried to break open the safe and had torn it up; the knobs, handle and combination were broken off. Crowbars, hammers and tools were lying in front of the safe. Nunnery got his gun and held it pointed at Bullock while he (Nunnery) telephoned the police. Before he could hang up the telephone, Nunnery was struck on his head from behind. Repeated blows were struck to his body and he passed out.

Richard Bullock, a witness for the State testified: On the night of 3 January 1971, he and defendant were playing pool in a poolroom in Fayetteville. Bullock and defendant had not entered the poolroom together and were playing at separate tables. Bullock was approached in the poolroom by one Raymond McGill and one Jerome Faircloth who asked Bullock if he wanted to go to Clinton and "make some easy money." Bullock approached defendant with the same inquiry. McGill and Faircloth did not tell Bullock how the money was to be made. The four men drove to Clinton and after riding around Clinton for several hours went to the grocery store later identified as belonging to Nunnery. Faircloth told defendant and Bullock to go to the back of the store, one man to each corner. (In his own behalf defendant testified, "I was supposed to go to one corner and Bullock to the other.") Faircloth went to a ladder at the back of the store and climbed up on the roof. Bullock went to the back and defendant went to "the other side of the store." McGill remained in the car as a lookout man. Bullock saw Faircloth hit Nunnery on the back of the head; he (Bullock) did not see either McGill or defendant again at the scene after Nunnery took him (Bullock) into the store. Bullock saw defendant the next day at the poolroom in Fayetteville and defendant told him that he (defendant) "got scared and left" the scene of the crimes.

We hold that the evidence was sufficient to withstand the motions for nonsuit. It is true that defendant testified that he thought they were going to Clinton to play pool; that although he was told to go to the "far corner" of the building and "holler" if he saw anybody go into the building, that he walked on past

State v. Connors

the "far corner" of the building and on to the road where he hitchhiked back to Fayetteville; that he took no part in the crimes with which he was charged. However, if there is any evidence which tends to prove guilt or which reasonably conduces to this conclusion as a fairly logical and honest deduction and not such as merely arouses a suspicion of guilt, the jury must determine if they are convinced beyond a reasonable doubt of the fact of guilt. 2 Strong's N. C. Index 2d, Criminal Law, § 106, p. 654; *State v. Mabry,* 269 N.C. 293, 152 S.E. 2d 112 (1967) ; *State v. Powell,* 6 N.C. App. 8, 169 S.E. 2d 210 (1969). Certainly, the evidence (even from defendant himself) tending to establish defendant's presence at the scene of the crimes charged and the failure to establish conclusively that he left the scene prior to the commission of said crimes serves to arouse more than a mere suspicion of guilt. Contradictions and discrepancies, even in evidence presented by the State, are for the jury to resolve and will not warrant nonsuit. *State v. Watson,* 10 N. C. App. 168, 177 S.E. 2d 771 (1970).

Defendant contends that the evidence against him in this case was no stronger than the evidence against defendants in *State v. Gaines,* 260 N.C. 228, 132 S.E. 2d 485 (1963) and *State v. Aycoth,* 272 N.C. 48, 157 S.E. 2d 655 (1967) in which cases the Supreme Court held that motions for nonsuit should have been granted. We disagree with this contention and conclude that the instant case is clearly distinguishable from the cited cases.

We have carefully considered the other assignments of error brought forward and argued in defendant's brief but find them to be without merit.

No error.

Chief Judge MALLARD and Judge BROCK concur.