### STATE v. MARMAN LEE KELLER.

(Filed 23 November, 1966.)

**1. Forgery § 1—**

     The false making of checks with fraudulent intent, which checks are capable of effecting a fraud, constitutes forgery.

**2. Criminal Law § 9—**

     A person is not liable for a criminal act committed by another when he does not participate in the commission of the act, directly or indirectly, but he is a party to the offense without regard to any previous confederation or design if he is present and actually aids or abets the perpetrator in the commission of the offense.

**3. Forgery § 2—**

     Evidence tending to show that defendant participated in conversations in which plans were formulated to steal a check-writing machine and blank printed checks of a corporation, that thereafter defendant stated the check-writing machine and checks had been taken, and that defendant drove two others in a car from place to place where they alighted, filled in, endorsed and cashed the checks, which were falsely signed with

the purported signature of the president of the corporation, *held* sufficient to support defendant's conviction as an aider and abettor in the forgery of the checks.

APPEAL by defendant Keller from *McLaughlin, J.,* April 1966 Session of CABARRUS.

Criminal prosecution upon ten indictments, which were consolidated for trial, each one of which charges in the first count Gary Wayne Edwards, James Dalton Jordan, and Marman Lee Keller with forgery of a check, a violation of G.S. 14-119, and in the second count charges the same defendants with uttering a forged check, a violation of G.S. 14-120. The check set forth in the first indictment, No. 10-192, reads as follows:

"B & W HOMES, INC.                               66-484
    Box 147                                     ‾‾‾‾‾‾
    Landis, N. C.                                 531

                        6-4 1965                 543
    Pay to the order of     James L. Thompson        $75.94
        75 DOLS     94 CTS                       Dollars
    MERCHANTS & FARMERS BANK
        Landis, N. C.
                                    B & W HOMES, INC.
                                    /s/   Claude Woodie"

Each check in the other nine indictments is substantially similar, with these exceptions: The amount payable in each of the other nine checks is different, except that in indictment No. 10-198 and indictment No. 10-199 the amount is identical, to wit, $70.86; five of the other nine checks are payable to James L. Thompson and endorsed James L. Thompson; the check in indictment No. 10-194 is payable to Larry M. Johnson, and the endorsement bears the name of James L. Thompson; the check set forth in indictment No. 10-197 is payable to Larry M. Johnson and endorsed Larry Monroe Johnson; the check in indictment No. 10-198 is payable to Larry M. Johnson, but the record does not show by whom it was endorsed; the check in indictment No. 10-199 is payable to Larry M. Johnson and endorsed Larry M. Johnson; some of the checks are stamped paid 5 June 1965, and some are stamped paid 7 June 1965; in each of the other nine indictments the indictment sets forth that the check is signed Claude Woodi instead of Claude Woodie as in the first indictment.

Plea: The record shows that James Dalton Jordan and Marman Lee Keller pleaded not guilty. The record does not show the plea of Gary Wayne Edwards, but appellant Keller's brief states that de-

fendant Edwards pleaded guilty and testified for the State. Verdict: The record states "the jury says for its verdict that the defendant [Marman Lee Keller] is guilty of the charge of forgery embraced in each of the respective bills of indictment, Nos. 10-192 through 10-201, and not guilty of the charge of uttering embraced in each of the respective bills of indictment, Nos. 10-192 through 10-201." The record does not show the verdict as to Jordan.

From a judgment of imprisonment in case No. 10-192, and from a judgment of imprisonment in case No. 10-193, this sentence to run consecutively to the prison sentence pronounced in case No. 10-192 which, by defendant's consent, was suspended for a period of five years upon specified conditions, and from judgments continued in the other eight cases, defendant Keller appeals.

*Attorney General T. W. Bruton and Deputy Attorney General Harry W. McGalliard for the State.*

*Llewellyn, McKenzie & Johnson by C. M. Llewellyn; and Clarence E. Horton, Jr., for defendant appellant.*

PARKER, C.J. The defendant offered no evidence. Defendant Keller assigns as error the denial of his motion for judgment of compulsory nonsuit made at the close of all the evidence.

The evidence for the State considered in its most favorable light and giving to the State every reasonable intendment thereon and every reasonable inference to be drawn therefrom *(S. v. Roux,* 266 N.C. 555, 146 S.E. 2d 654), shows the following: "Claude Woodie is president of B & W Homes, Inc., a manufacturer of mobile homes. He uses in his business checks imprinted with the name of B & W Homes, Inc. About a year ago the office of his business was broken into, and half of a large check book was stolen. At the same time, a check-writing machine was stolen. The check-writing machine imprinted words and letters upon a check. "B & W Homes, Inc." is on the machine. (He was testifying at the April 1966 Session of Cabarrus County Superior Court, and each of the ten bills of indictment charges the offense was committed on 4 June 1965.) He did not sign any one of the checks set forth in the ten indictments, and he did not authorize any person to sign his name on any one of these ten checks. He spells his name "Woodie" and not "Woodi." Defendant Keller never worked for B & W Homes, Inc.

Gary Wayne Edwards, a witness for the State, testified: "I talked to Marman Lee Keller relative to the checks about a week before they were cashed. I didn't talk directly to Mr. Keller. He talked in my presence about a week before they were cashed. It was talked that a check detector *(sic)* would be stolen. Mr. Keller

was talking about checks, and a check protector *(sic)* being stolen, and Mr. Jordan, he was supposed to fix the checks up. Carl Benge and myself were to cash the checks."

Defendant Keller, Carl Benge, and Gary Wayne Edwards went down to the place of business of B & W Homes, Inc., to steal therefrom checks and a check protector, but the B & W Homes, Inc., was open and they could not be stolen that night. The following weekend defendant Keller, Benge, and Edwards met in a poolroom in North Kannapolis about seven o'clock. Edwards testified: "He talked to Carl Benge, but I don't know what was said, and then he left again and came back about eleven o'clock. He said we would go back in the car, that the checks and check protector had been taken. 'He' is Mr. Keller."

As the Attorney General accurately states in his brief, "the above evidence sets the stage of the plot for Keller and others to forge the checks in question and to get them cashed."

The State offered other evidence to this effect: Edwards saw defendants Keller and Jordan on 4 June 1965. Jordan gave Edwards and Benge some checks and two motor vehicle operator licenses. Edwards does not know definitely who made the checks up, and did not see a check-writing machine at any time. While Edwards and Benge were being given the checks and operator licenses, Keller was in a nearby restaurant. After Edwards and Benge got the checks and licenses from Jordan, Keller drove his (Edwards') car from place to place in Kannapolis and waited while Edwards and Benge filled in, endorsed, and cashed the checks, and that the proceeds from the checks were pooled and divided equally between Edwards, Benge, Keller, and Jordan. On cross-examination Edwards testified in substance that Keller stayed in the restaurant while he and Benge talked to Jordan at his car, and that Jordan gave him some partially filled out checks and two driver licenses. He did not see Jordan make up any of the checks or the driver licenses, though the ink was still wet on the licenses.

Deputy Sheriff Tucker, a witness for the State, testified that after warning defendant Keller of his constitutional rights, Keller told him in substance as follows: He was driving Edwards' car that day in the Kannapolis area. He was taking Edwards and Benge from place to place, but did not know what they were doing. He learned that they were cashing checks. They split up the money from these checks, but he did not think the money was split equally; he only got $150.

The State's evidence was amply sufficient to permit a jury to find (1) a false making of every check set forth in the ten indictments, (2) a fraudulent intent on the part of every person who

knowingly participated in the false making of every one of the said ten checks, and (3) every one of the said ten checks was apparently capable of effecting a fraud. These are the three essential elements necessary to constitute the crime of forgery. *S. v. Phillips,* 256 N.C. 445, 124 S.E. 2d 146; *S. v. Dixon,* 185 N.C. 727, 117 S.E. 170.

This is said in 22 C.J.S., Criminal Law, § 79, 1961:

> "It is a general rule under the common law that one is not liable for the criminal acts of another in which he did not participate directly or indirectly. A person is a party to an offense, however, if he either actually commits the offense or does some act which forms a part thereof, or if he assists in the actual commission of the offense or of any act which forms part thereof, or directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof. To constitute one a party to an offense it has been held to be essential that he be concerned in its commission in some affirmative manner, as by actual commission of the crime or by aiding and abetting in its commission and it has been regarded as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent."

This has been quoted with approval in *S. v. Burgess,* 245 N.C. 304, 96 S.E. 2d 54; *S. v. Spears,* 268 N.C. 303, 150 S.E. 2d 499.

In 21 Am. Jur. 2d., Criminal Law, § 120, it is stated:

> "A principal in a crime must be actually or constructively present, aiding and abetting the commission of the offense. It is not necessary that he do some act at the time in order to constitute him a principal, but he must encourage its commission by acts or gestures, either before or at the time of the commission of the offense, with full knowledge of the intent of the persons who commit the offense. He must do some act at the time of the commission of the crime that is in furtherance of the offense."

It is thoroughly established law in this State that, without regard to any previous confederation or design, when two or more persons aid and abet each other in the commission of a crime, all being present, all are principals and equally guilty. *S. v. Taft,* 256 N.C. 441, 124 S.E. 2d 169; *S. v. Kelly,* 243 N.C. 177, 90 S.E. 2d 241.

Considering the State's evidence in the light most favorable to it, it is plain that the total combination of facts shown by the evidence shows substantial evidence of defendant Keller's guilt of all essential elements of the felonies charged in both counts of the ten

indictments and is amply sufficient to carry the cases charged in the ten indictments to the jury against him, and to support the verdict of guilty of forgery charged in the first count of each indictment returned against defendant Keller. The trial judge properly overruled defendant's motion for judgment of compulsory nonsuit.

We have considered defendant's other assignments of error. Prejudicial error is not shown. No new principles of law are involved. Defendant's other assignments of error do not merit discussion, and all are overruled.

In the trial below we find

No error.