STATE OF NORTH CAROLINA v. JOHN C. DENNY III

No. 105

(Filed 24 January 1978)

**1. Jury § 6.3— prospective jurors—question as to state of mind improper**

The trial court did not err in refusing to permit defense counsel to ask prospective jurors if they would "be willing to be tried by one in your present state of mind if you were on trial in this case."

State v. Denny

**2. Criminal Law § 85.1— character of defendant—manner of introduction improper**

Where defendant called a witness who had known him for six to eight months and asked him to describe defendant's behavior and to give his impression of defendant, and defendant also called an employee at the jail in which defendant had been incarcerated for 100 days and asked him how defendant conducted himself while in custody, the trial court properly sustained objections to the questions, since the manner in which defendant attempted to elicit character testimony from his witnesses was improper.

**3. Criminal Law § 101.2— newspaper article about defendant—jury examined en masse—discretionary matter**

It was within the trial court's discretion to examine the jury *en masse* rather than individually to determine whether the jurors had read, or had been improperly influenced by, a newspaper article concerning defendant which was published during trial.

DEFENDANT appeals from judgments of *McLelland, J.,* entered at the 20 June 1977 Session, LEE Superior Court.

Upon indictments, proper in form, defendant was convicted of (1) the crime against nature and (2) first degree rape of Mrs. Gloria Thomas on 9 March 1977 in Lee County. He was sentenced to ten years for the crime against nature and life imprisonment for the rape, to run consecutively.

Mrs. Gloria Thomas testified that defendant came to the yard outside her home about 1:30 p.m. the afternoon of 9 March 1977, ostensibly to interview her in connection with an assignment for a political science course. After asking several questions and ascertaining that her husband was not at home, defendant displayed a knife and ordered Mrs. Thomas into her house. He permitted her to put her two young children to bed for their afternoon nap, then ordered her to disrobe. Threatening harm to her children if she did not comply with his demands, he forced her to engage in intercourse and to perform an oral sex act upon him. Then, after receiving her assurances that she would not report his actions to anyone, he departed. In addition to identifying defendant as her assailant, Mrs. Thomas identified articles of clothing taken from defendant's residence as clothing worn by the assailant and identified a car belonging to defendant as the same or similar to the car in which her assailant had driven to her home.

The State also offered the testimony of Officer Billy Bryant of the Lee County Sheriff's Department and Dr. James C. Little,

Jr., a Lee County physician. Officer Bryant related the substance of a statement given by Mrs. Thomas immediately after she was raped. This statement substantially corroborates her testimony at trial. Dr. Little testified that he examined Mrs. Thomas on 9 March 1977, and his examination revealed the presence of sperm in her vagina.

The defendant did not testify but presented evidence vaguely tending to show that he was at a local Army recruitment office for fifteen to twenty-five minutes sometime between 12 noon and 3:30 on the date Mrs. Thomas allegedly was raped. Defendant attempted to introduce testimony relating to his general behavior and demeanor, but such testimony was excluded by the court upon objection.

*Rufus L. Edmisten, Attorney General; David S. Crump, Assistant Attorney General, for the State.*

*Harry E. Wilson, attorney for defendant appellant.*

HUSKINS, Justice.

[1] By his first assignment of error defendant contends the trial court erred by refusing to permit him to ask the following questions of prospective jurors:

"MR. WILSON [defense attorney]: Would you be willing to be tried by one in your present state of mind if you were on trial in this case?

THE COURT: That question is improper. You may not ask it.

MR. WILSON: Searching your mind as you would want the mind of a juror to be searched if you were on trial in this case, can you think of any reason why you would not want a juror with your present state of mind to hear this case?

THE COURT: I am not going to allow you to put the jury on trial. Do not ask that question. Not in any form."

G.S. 9-15(a) secures to litigants the right "to make direct oral inquiry of any prospective juror as to the fitness and competency of any person to serve as a juror . . ." This Court has repeatedly held, however, that the manner and extent of the inquiry is a matter committed largely to the discretion of the trial judge and

State v. Denny

is subject to his close supervision. *State v. Young*, 287 N.C. 377, 214 S.E. 2d 763 (1975); *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975); *State v. Jackson*, 284 N.C. 321, 200 S.E. 2d 626 (1973); *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745, *cert. denied sub nom. Holloman v. North Carolina*, 410 U.S. 987, 36 L.Ed. 2d 184, 93 S.Ct. 1516 (1973). Moreover, such discretion is properly exercised when the trial court prohibits ambiguous or confusing hypothetical questions. "On the voir dire examination of prospective jurors, hypothetical questions so phrased as to be ambiguous and confusing or containing incorrect or inadequate statements of the law are improper and should not be allowed." *State v. Vinson*, supra at 336, 215 S.E. 2d at 68. We are of the opinion that the trial court's refusal to permit defense counsel to ask prospective jurors the questions set forth above was a proper exercise of its discretion. Accordingly, defendant's first assignment of error is overruled.

[2] Defendant called as witnesses Mr. Leroy Oldham, who had known defendant for six to eight months, and Mr. Watson Kelly, an employee at the jail in which defendant had been incarcerated for approximately 100 days. Mr. Oldham was asked to "describe Mr. Denny's behavior" and to give his "impression" of defendant; Mr. Watson was asked "how the defendant . . . conducted himself" while in custody and whether he had ever observed defendant "become angry." Neither witness had indicated any familiarity with defendant's reputation. Defendant contends that by sustaining objections to these questions the trial court improperly excluded evidence pertaining to defendant's character. This constitutes his second assignment of error.

A criminal defendant, if he so elects, may always offer evidence of his good character as *substantive evidence* on the issue of his guilt or innocence. *State v. Davis*, 231 N.C. 664, 58 S.E. 2d 355 (1950); *State v. Moore*, 185 N.C. 637, 116 S.E. 161 (1923); *State v. Hice*, 117 N.C. 782, 23 S.E. 357 (1895). *See generally* 1 Stansbury, North Carolina Evidence § 104 (Brandis rev. 1973); McCormick, Evidence § 191 (2nd ed. 1972). It is well settled, however, that in this jurisdiction a defendant's character is proved by testimony concerning "his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion. [Moreover], the testifying witness must have sufficient contact with that community or society to

qualify him as knowing the general reputation of the person sought to be attacked or supported." *State v. McEachern*, 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973). A witness's personal opinion concerning another person's character is inadmissible. *Johnson v. Massengill*, 280 N.C. 376, 186 S.E. 2d 168 (1972); 1 Stansbury, North Carolina Evidence § 110 (Brandis rev. 1973). Nor may witnesses be questioned on direct examination concerning specific acts indicative of character. *Johnson v. Massengill, supra*; 1 Stansbury, supra at §§ 110, 111. *See State v. O'Neal*, 187 N.C. 22, 120 S.E. 817 (1924). *See also State v. Bush*, 289 N.C. 159 at 169, 221 S.E. 2d 333 at 339-40 (1976), and cases there cited. Further, before a witness may testify concerning a person's character he must qualify himself by affirmatively indicating that he is familiar with that person's general reputation. *State v. Stegmann*, 286 N.C. 638, 213 S.E. 2d 262 (1975), and cases cited therein. "The rule is, that when an impeaching or sustaining character witness is called, he should first be asked whether he knows the general reputation and character of the witness or party about which he proposes to testify. This is a preliminary qualifying question which should be answered yes or no. If the witness answer it in the negative, he should be stood aside without further examination. If he reply in the affirmative, thus qualifying himself to speak on the subject of *general* reputation and character, counsel may then ask him to state what it is." *State v. Hicks*, 200 N.C. 539, 540-41, 157 S.E. 851, 852 (1931). *Accord, State v. Stegmann, supra.*

Application of the foregoing principles to the present case leads us to conclude that the manner in which defendant attempted to elicit character testimony from Messrs. Oldham and Kelly was improper and objections thereto were properly sustained. Accordingly, defendant's second assignment of error is overruled.

[3] Defendant's third assignment of error relates to the manner in which the trial court attempted to determine whether jurors had read a newspaper article which appeared during the course of the trial. The record discloses that a story in the 21 June 1977 *News and Observer* circulated in Harnett and Lee Counties commented on defendant's trial and disclosed that defendant had recently been paroled from a prison term imposed for a previous conviction of rape. The trial court questioned the jury *en masse* and inquired whether any juror had read an article concerning

the trial in the *News and Observer*. The trial court further asked whether any juror was aware of the existence of the newspaper article concerning defendant. No juror responded and the trial was allowed to proceed. Defendant contends that the trial court erred by failing to require each juror to respond individually and audibly to the question whether he or she had read the newspaper article concerning defendant.

The procedure chosen by the trial court to determine whether the jurors had read, or had been improperly influenced by, the newspaper article concerning defendant constituted a proper exercise of the court's discretion. *See State v. McVay* and *State v. Simmons*, 279 N.C. 428, 183 S.E. 2d 652 (1971). No abuse of discretion is shown. Defendant's third assignment of error is overruled.

By his fourth and final assignment of error defendant contends the trial court erred in denying his motion to dismiss for insufficient evidence. Mrs. Gloria Thomas positively identified defendant as the person who raped her. Her evidence alone is sufficient to carry the case to the jury. *See, e.g., State v. Shaw*, 284 N.C. 366, 200 S.E. 2d 585 (1973); *State v. Hanes*, 268 N.C. 335, 150 S.E. 2d 489 (1966). *Compare State v. Miller*, 270 N.C. 726, 154 S.E. 2d 902 (1967).

Defendant having failed to show prejudicial error, the verdicts and judgments must be upheld.

No error.