STATE OF NORTH CAROLINA v. BOBBY ERVIN HOOD

No. 31

(Filed 24 January 1978)

**1. Criminal Law § 15— change of venue—motion by State on defendant's behalf**

The trial court did not err in granting the State's motion for change of venue under G.S. 1-84 (amended, Chapter 12, 1977 Session Laws, to apply only to civil actions) on the grounds that defendant could not receive a fair and impartial trial in the county in which the case was pending, and it was especially proper for the State to move for change of venue since defendant was not represented by counsel at the time.

**2. Criminal Law § 15.1— pretrial publicity—change of venue proper**

The trial court's refusal to grant defendant's motion for change of venue to the county where the case was initially scheduled for trial was a proper exercise of that court's discretion where there was no evidence that the county in which defendant was tried was not an impartial forum or that defendant was prejudiced or unduly burdened in any way by the transfer of his case to that county; moreover, the evidence tended to show that defendant would have been prejudiced by pretrial publicity had his case not been removed from the county where it was originally scheduled.

**3. Criminal Law §§ 73.2, 87.1— leading questions—hearsay testimony—evidence properly admitted**

Defendant's contention that the trial court erred by allowing the district attorney to elicit testimony from State's witnesses by leading questions or questions calling for hearsay answers is without merit, since the allegedly leading questions objected to either were not leading or were within the trial court's discretion, and the questions calling for allegedly hearsay testimony in fact did not show the truth of the matters asserted but simply proved that certain statements were made.

**4. Homicide § 31.1— homicide statute providing for death penalty—death penalty invalidated—trial under statute proper**

The trial court in a first degree murder prosecution did not err in overruling defendant's motion to dismiss for the reason that the death penalty provided for by G.S. 14-17 had been declared unconstitutional and the General Assembly had not enacted new legislation providing a different punishment, since the punishment statute in effect at the time of the crime in question provided that in the event it was determined by the U. S. Supreme Court that the death penalty could not be imposed, the punishment would then be life imprisonment.

**5. Criminal Law § 113.7— acting in concert—jury instructions proper**

Defendant in a first degree murder prosecution was not prejudiced by the trial court's instructions on acting in concert where the jury must have understood that it would have to find that defendant and others were acting together in planning and executing the crime before it could find that defend-

ant acted in concert with another person, and the jury must have understood from the judge's instruction that if either defendant's companion or defendant shot and killed the victim while acting together, both would be guilty.

6. **Criminal Law § 112.4— circumstantial evidence—jury instructions proper**

Defendant's contention that the trial court erred in his charge on circumstantial evidence is without merit where defendant did not specify the error; defendant presented no request for instructions; and the court, although not required to do so, did instruct the jury on circumstantial evidence and did instruct concerning the intensity of proof required for such evidence.

7. **Homicide § 21.5— first degree murder—conspirators' testimony—sufficiency of evidence**

In a prosecution for first degree murder, testimony by two of defendant's companions in the crime concerning the planning and execution of the murder and defendant's participation therein was sufficient to overcome defendant's motion for a directed verdict of not guilty.

APPEAL by defendant from *Grist, J.*, at the 16 August 1976 Special Session of McDOWELL Superior Court.

On a bill of indictment, proper in form, defendant was tried and convicted of the first-degree murder of Herman Lee Philyaw and was sentenced to life imprisonment.

The State introduced evidence tending to show that in the early morning of 7 May 1975, David Lee Philyaw, the victim's son, and Reuben Clark were riding to work in rural Caldwell County with David's father, in a pickup truck belonging to David's father, Herman Lee Philyaw. While traveling on a private road near State Highway 90, north of Collettsville, Herman Lee Philyaw stopped the truck so that one of the passengers could clear some brush off the road. David then heard a loud explosion, whereupon the side glass on the driver's side shattered and his father slumped forward in the driver's seat. The truck began rolling, and as David Lee Philyaw grabbed the steering wheel he recognized Bobby Burns with a rifle in his hand running along the road. Burns and another individual were trying to enter a white Ford automobile which was leaving the scene, but were unable to do so. David steered the truck toward Burns, overtook him and pinned him against a bank. The other individual ran across the road toward the river. David jumped out of the truck, grabbed a .22 sawed-off rifle from Burns' hands, and started beating Burns with the weapon. He then ran up to his grandfather's house and had him call the sheriff and an ambulance.

David Philyaw had known Bobby Burns several years, and Burns had lived in his father's house at one time. David did not recognize either the driver of the white Ford which left the scene, or the person who tried to get into that vehicle just before it sped away.

Herman Lee Philyaw died from the gunshot wound shortly afterward.

Bobby Burns, Isaiah Hood, Edith Philyaw (deceased's wife) and the defendant were all charged with the murder of Herman Lee Philyaw. Bobby Burns and Isaiah Hood pled guilty to second degree murder and testified for the State at defendant's trial.

Bobby Burns testified that he worked at Harper's Furniture Company with Edith Philyaw and Isaiah Hood. He had previously lived in the Philyaw home for some nine months and was in love with Mrs. Philyaw; and on one occasion Burns and Mrs. Philyaw had spent the weekend together. Burns also testified that approximately one month prior to 7 May 1975, Edith Philyaw gave him an envelope containing money which he was to deliver to Isaiah Hood, defendant's nephew, and that on the day prior to the killing, Burns, Isaiah Hood and defendant met and planned the murder of Herman Lee Philyaw. At this time defendant said that he would shoot Philyaw. Burns was to accompany him and shoot his .22 rifle into the back of the vehicle to slow it down. Isaiah was to drive the getaway car.

Burns further testified that early on the morning of 7 May, the three men travelled to a spot which Philyaw normally passed on his way to work. They put some brush in the road, and defendant and Burns took up positions on opposite sides of the road. Defendant had a shotgun and Burns had a .22 rifle. When the victim's truck approached Burns heard defendant yell, "Get ready, here he comes." When the truck stopped Burns heard a loud explosion, whereupon he jumped and his rifle went off into the air. On cross-examination the witness admitted to having made prior inconsistent statements to police, and further admitted that, prior to the killing, he had made the statement that he would kill Herman Philyaw.

Isaiah Hood testified that Bobby Burns gave him an envelope containing several hundred dollars, and that he then gave this to his uncle, the defendant. On the morning of 7 May 1975, he drove

Burns and defendant to a spot near Collettsville, let them out and then parked his car on the side of the road. He did not see either defendant or Burns with a gun, nor did he know whether or not someone else was in the woods with Bobby Burns.

S.B.I. employee Frederick Hurst, a firearm and tool marks examiner, testified that fragments and wadding taken from the victim's person and his truck could only have been fired from a 12 gauge shotgun, and could not have been fired from a .22 rifle.

Howard Mathes testified that on the morning of 7 May 1975 at 7:30 a.m., defendant came by his house just off Highway 90 near Collettsville. Defendant was on foot, and asked Mathes to take him to his home in Harpertown.

Defendant offered no evidence.

*Attorney General Rufus L. Edmisten; Assistant Attorney General Isaac T. Avery III and Deputy Attorney General William W. Melvin for the State.*

*Bruce W. Vanderbloemen for defendant appellant.*

MOORE, Justice.

Defendant assigns as error the trial court's denial of his motion for a change of venue from McDowell County to Caldwell County, the county in which the alleged crime occurred. Defendant's case was initially scheduled for trial in Caldwell County, along with the trials of his three codefendants, Bobby Burns, Isaiah Hood and Edith Philyaw. On 2 July 1975, Edith Philyaw moved for a change of venue pursuant to G.S. 1-84 (amended, Chapter 12, 1977 Session Laws, to apply only to civil actions). On 18 August 1975, two of the codefendants, Burns and Isaiah Hood, pled guilty to the charges against them. On 20 August 1975, Judge Briggs granted defendant's attorneys' motion that they be permitted to withdraw from the case. A further hearing was held that same day to determine codefendant Philyaw's motion for change of venue.

By order dated 21 August 1975, Judge Briggs removed Mrs. Philyaw's case to McDowell County for trial for the reason that Mrs. Philyaw could not receive a fair and impartial trial in Caldwell County. On the same day Judge Briggs entered a similar order in the case against defendant, based upon motion of the

district attorney. In this order Judge Briggs found facts and concluded that ". . . it could be difficult for defendant to receive a fair trial in Caldwell County due to pretrial publicity." Pursuant to G.S. 1-84 he then ordered that defendant's case be transferred and set for trial in McDowell County. It appears from the record that, at the time the State's motion for change of venue was heard by Judge Briggs, defendant was not represented by counsel. Though it does not appear in the record, defendant says that both he and Bruce W. Vanderbloemen, the attorney appointed for him after the hearing, orally objected to a change of venue of the case.

On 9 September 1975, the defendant moved in open court in McDowell County that his case be transferred back to Caldwell County. This motion was denied by Ervin, J., on that date.

Defendant's case and the case against Edith Philyaw were scheduled for joint trial at the 17 November 1975 Special Session of McDowell County Superior Court. In a motion filed 17 November 1975, defendant objected a third time to trial in McDowell County, and moved, pursuant to G.S. 1-84, that the case be tried in Wilkes County or some other county adjoining Caldwell County, the county in which the case originated. This motion was denied by Grist, J., on 18 November 1975. From this denial, defendant gave notice of appeal to the Court of Appeals, pursuant to G.S. 1-84. The State then proceeded with the trial of Edith Philyaw, having severed the case against defendant due to his appeal of the order denying his motion for change of venue.

On 15 January 1976, defendant was granted an extension of time until 21 February 1976 to serve the case on appeal on the district attorney, and an extension of 150 days from 17 November 1975 to docket the appeal in the Court of Appeals. Defendant failed to serve the case on appeal on the district attorney and failed to perfect the appeal. On 5 May 1976, pursuant to Rule 25 of the Rules of Appellate Procedure, the district attorney moved the court for an order dismissing defendant's appeal of the venue issue, and on 12 May 1976, Jackson, J., dismissed the appeal. Judge Jackson found that defendant's attorney had prepared the case on appeal, but on 20 February 1976, defendant had informed his attorney that he did not wish to perfect the appeal.

Defendant's case was then scheduled for trial at the 16 August 1976 Special Session of McDowell Superior Court. At a pretrial hearing on 26 July 1976, the defendant, through his attorney, moved again for a change of venue from McDowell County to Caldwell County. This motion was denied in an order by Thornburg, J. The trial then proceeded in McDowell County, and defendant was convicted on 19 August 1976.

Venue is controlled by statute. *State v. Lewis*, 142 N.C. 626, 55 S.E. 600; *State v. Woodard*, 123 N.C. 710, 31 S.E. 219. Article 3 of Chapter 15A, General Statutes, sets forth the statutory provisions governing venue. Generally, venue in a criminal case remains in the county in which the crime was committed. G.S. 15A-131(c) provides:

> "Venue for probable cause hearings and trial proceedings in cases within the original jurisdiction of the superior court lies in the county where the charged offense occurred."

Session Laws 1973, c. 1286, s. 31, and Session Laws 1975, c. 573, provide that Chapter 15A, Criminal Procedure Act:

> ". . . becomes effective on September 1, 1975, and is applicable to all criminal proceedings begun on and after that date and each provision is applicable to criminal proceedings pending on that date to the extent practicable. . . ."

The case against defendant was pending at the time Chapter 15A went into effect on 1 September 1975; therefore the provisions of G.S. 15A-131(c) as set out above are applicable, and the proper venue in this case initially lay in Caldwell County.

At the time of the proceedings against defendant, however, G.S. 1-84 stated:

> § 1-84. Removal for fair trial. — In all civil and criminal actions in the superior and district courts, when it is suggested on oath or affirmation, on behalf of the State or the traverser of the bill of indictment, or of the plaintiff or defendant, that there are probable grounds to believe that a fair and impartial trial cannot be obtained in the county in which the action is pending, the judge may order a copy of the record of the action removed to some adjacent county for trial, if he is of the opinion that a fair trial cannot be had in said county, after hearing all the testimony offered on either side by af-

fidavits: Provided, that when a case has been removed to another county for trial on motion of the solicitor, the defendant may, upon call of the case for trial, object to trial therein and move that the case be sent for trial to some other county adjacent to the county from which removed, and in the event the objection is overruled, the defendant may forthwith appeal. If the motion of the defendant is sustained the judge shall order the case tried in some other county adjacent to the county from which the case was first removed. If, upon appeal, the court shall find error in the order denying the motion or if it shall suggest that the case probably ought to be removed then, and in such event, it shall be the duty of the judge at the next session of court of the county to which the case was first removed to order the case sent for trial to some other county adjacent to the county where the bill of indictment was found.

G.S. 1-84 was amended as of 16 February 1977 so as to apply only to civil actions. *See* Chapter 12, 1977 Session Laws. For the present statutes concerning removal for purposes of a fair trial, *see* G.S. 15A-957 and G.S. 15A-133.

G.S. 1-84 afforded both the defendant and the State the right to move for a transfer of a criminal case to another county for purposes of obtaining a fair and impartial trial. The proviso of G.S. 1-84 specifically granted a defendant an immediate right of appeal from an order by a trial court overruling defendant's objection to trial in a county to which an action had been removed on motion of the solicitor. In the present case, pursuant to this proviso, defendant objected to trial in McDowell County and moved for trial in a county adjacent to Caldwell County. This objection was overruled, and defendant exercised his right of immediate appeal. Defendant's failure to perfect this appeal operates as a waiver of any right to removal he may have had under G.S. 1-84. However, the failure to perfect the appeal under G.S. 1-84 is not dispositive of this assignment of error. For, by its terms, G.S. 1-84 limits the interlocutory review contemplated to a consideration of whether the trial court erred in refusing to remove the case to a county adjacent to the county from which the case was initially removed. The review contemplated by the statute does not include review of the question whether the ini-

tial removal from Caldwell County, on the motion of the solicitor, was proper. We now turn to this question.

Defendant insists that he has a right to be tried in the county where the charged crime allegedly occurred. He does not argue the nature of this right, but in this State the right is statutorily based, and is not a right grounded in the Federal or State Constitutions. *See* G.S. 15A-131; *State v. Lewis, supra; State v. Woodard, supra.* While G.S. 15A-131 grants a defendant the right to be tried in the county where the alleged offense occurred, it is clear that G.S. 1-84, at the time of defendant's trial, also granted the State the right to remove a defendant's case to another county, provided the State shows ". . . probable grounds . . . that a fair and impartial trial cannot be obtained in the county in which the action is pending. . . ."

Defendant contends that the State's right to move for a change of venue under G.S. 1-84 is limited to those instances where the prosecution could not get a fair and impartial trial. Defendant argues that the State should not be permitted to obtain removal of his case on grounds that he, the defendant, could not get a fair trial.

[1] Though this is, admittedly, an unusual situation, we feel that the trial court did not commit error in granting the State's motion for change of venue under G.S. 1-84. At the time of the then codefendant's motion for change of venue, the defendant was not represented by counsel. Two other codefendants, Burns and Isaiah Hood, had pled guilty in this case just two days prior to the hearing; and this fact, as well as other aspects of the case, was highly publicized in the vicinity of Caldwell County. Upon the basis of these facts, the trial judge granted codefendant Philyaw's motion, as well as that of the State, for change of venue on grounds that the defendants could not receive fair and impartial trials in Caldwell County.

G.S. 1-84 does not limit the prosecutor, in applying for a change of venue, to those cases where he might believe that the State cannot get a fair trial in the county where the indictment is laid. The statute itself is comprehensive enough to include a motion by the State where the prosecutor believes that the defendant could not get a fair and impartial trial. *See State v. Wheat,*

111 La. 860, 35 So. 955, where a similar statute was so construed. In that case the court said:

"In contemplation of law it is as much the duty of a prosecuting officer to insure the man accused of crime of a fair and impartial trial as it is his duty to demand such for the State."

In *State v. Archer*, 32 N.M. 319, 255 P. 396, the New Mexico court held similarly in the absence of a specific statute. We hold, under the facts of this case and the terms of then existing G.S. 1-84, and especially since the defendant was not represented by counsel at the time, that it was proper for the State to move for change of venue on the grounds that defendant could not receive a fair and impartial trial in the county in which the case was pending.

[2] A further question involved here is whether the court erred in removing defendant's case from Caldwell to McDowell County, and whether the court erred in refusing to transfer the case back to Caldwell on motion of defendant. A motion for change of venue on account of local prejudice or pretrial publicity is addressed to the sound discretion of the trial court, and the court's ruling will not be overturned unless there is a showing of manifest abuse of discretion. *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521, and cases cited therein.

In the present case, based on affidavits and press clippings submitted by attorneys for Mrs. Philyaw, the court concluded as a matter of law:

"1. That it could be difficult for the Defendant to receive a fair trial in Caldwell County due to pretrial publicity;

2. That, in the interest of justice, a change of venue should be granted in this case."

Defendant offered no evidence to show that there was an abuse of discretion in the granting of the motion for change of venue. There is nothing to show that McDowell County was not an impartial forum, or that defendant was prejudiced or unduly burdened in any way by the transfer of his case to McDowell County. To the contrary, in view of the findings of fact by Judge Briggs in removing defendant's case, it appears that defendant would have been prejudiced by pretrial publicity had this case not been

removed from Caldwell County. Thus, we hold that the trial court's refusal to grant defendant's motions for change of venue to Caldwell was a proper exercise of that court's discretion. This assignment of error is overruled.

[3] Defendant next contends that the trial court erred on numerous occasions by allowing the district attorney to elicit testimony from State's witnesses by leading questions, questions calling for hearsay answers, and questions which assumed facts not in evidence.

On direct examination, the district attorney asked State's witness Bobby Burns the following:

"Q. What, if anything, did Mrs. Philyaw ever give you to give to Isaiah Hood? . . . .

A. It was an envelope."

Objection to this question was entered by defendant on grounds that it presumed hearsay, and the objection was overruled. The question is not leading; nor does it call for a hearsay answer. If Mrs. Philyaw did in fact direct the witness to give something to Isaiah Hood, the witness's testimony regarding her directive would not be hearsay. Such testimony would not concern the truth or falsity of what was said, but rather, would concern merely the issue of what was said, and whether it was in fact said. "[W]henever the assertion of any person, other than that of the witness himself in his present testimony, is offered to prove the truth of the matter asserted, the evidence so offered is hearsay. If offered for any other purpose, it is not hearsay." 1 Stansbury, North Carolina Evidence, sec. 138 (Brandis rev. 1973); *State v. Miller*, 282 N.C. 633, 194 S.E. 2d 353. Testimony regarding a direction by Mrs. Philyaw that the witness give an envelope to another is not offered to prove the truth of the matter asserted, but rather is offered simply to prove that the statement was made.

During the course of State's witness Burns' testimony the following occurred:

"Q. All right, tell the Jury everything that Bobby Hood said or you said in Mr. Hood's presence.

A. Well, we set there . . . .

MR. VANDERBLOEMEN: Objection to the leading.

THE COURT: Overruled.

A. Bobby Hood and I and Isaiah set there and we discussed about putting the brush. . . .

MR. VANDERBLOEMEN: Objection, your Honor.

THE COURT: Just the discussion between you and Bobby Hood.

A. Well, the way it was I suppose to he said I supposed to set upon the bank. . . .

MR. VANDERBLOEMEN: Objection and move to strike.

THE COURT: Overruled.

EXCEPTION NO. 6

A. I suppose to set upon the bank and shoot through the windshield, back windshield.

Q. At what point?

A. As soon as he come upon the brush and slowed down.

MR. VANDERBLOEMEN: Objection and move to strike, 'I was suppose to'.

THE COURT: Overruled.

EXCEPTION NO. 7

Q. Is this what Bobby Hood said?

A. Yes sir.

MR. VANDERBLOEMEN: Objection to the leading.

THE COURT: Overruled.

EXCEPTION NO. 8."

It is evident that the error, if any, in allowing this broad request to be answered by the witness was harmless, for the witness's answers do not amount to hearsay. The witness's response that he "was suppose to set upon the bank [etc.] . . ." indicates that defendant directed the witness to do certain things. Such a response is not hearsay in that it is offered only to show that the statement was made, and not to show the truth of mat-

ters asserted in the statement. The probative force of such testimony, *i.e.*, that the statement was made, depends on the credibility of the witness himself, and not on the credibility of some person other than the witness producing such testimony. *Cf. State v. Deck*, 285 N.C. 209, 203 S.E. 2d 830; *Chandler v. Jones*, 173 N.C. 427, 92 S.E. 145; 1 Stansbury, N. C. Evidence, sec. 138 (Brandis rev. 1973). As is stated in *State v. Lassiter*, 191 N.C. 210, 131 S.E. 577: ". . . The inherent vice of hearsay testimony consists in the fact that it derives its value not from the credibility of the witness himself, but depends upon the veracity and credibility of some other person from whom the witness got his information." The value of the testimony here depends on the credibility of the witness, Bobby Burns, and not on the credibility of defendant. It is not, therefore, hearsay.

As regards the question "Is this what Bobby Hood said?", and the witness's answer to that question, the allowance of this leading question was in the discretion of the trial judge. Such rulings on the use of leading questions are discretionary and reversible only for abuse of discretion. *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10, and cases cited therein. As we held in *State v. Smith*, *supra*, leading questions are permissible when that mode of questioning is best calculated to elicit the truth. This question indicates that it was asked for purposes of clarification of the witness's prior testimony. While the question could have been phrased differently, allowing it in this context was not an abuse of discretion.

The remaining objections and exceptions raised by defendant under this assignment of error have been considered and found to be without merit. The allegedly leading questions objected to are either not, in fact, leading, or else are within the trial court's discretion. This assignment of error is overruled.

[4] The defendant next assigns as error the trial judge's action in overruling his motion to dismiss for the reason that the death penalty provided for by G.S. 14-17 had been declared unconstitutional, and the General Assembly had not enacted new legislation providing for a different punishment.

The murder for which the defendant was convicted occurred on 7 May 1975. G.S. 14-17 was rewritten by Session Laws 1973, c. 1201, effective 8 April 1974, to provide that in the event it was determined by the Supreme Court of the United States that the

death penalty could not be imposed, the punishment would then be life imprisonment. The death penalty under G.S. 14-17 was invalidated by the Supreme Court of the United States in *Woodson v. North Carolina*, 428 U.S. 280, 49 L.Ed. 2d 944, 96 S.Ct. 2978 (1976). Under the provision of G.S. 14-17, as rewritten, the punishment for murder in the first degree in North Carolina then became life imprisonment; and, as we held in *State v. Cousin*, 291 N.C. 413, 230 S.E. 2d 518 (1976):

> "[T]here was no error in failing to dismiss the indictments because this Court may substitute life imprisonment for the death penalty by authority of the provisions of the 1973 Sess. Laws, c. 1207, § 7 (1974 Session)."

*See also State v. Woods*, 293 N.C. 58, 235 S.E. 2d 47 (1977); *State v. Hardee*, 293 N.C. 105, 235 S.E. 2d 828 (1977); *State v. Finch*, 293 N.C. 132, 235 S.E. 2d 819 (1977); *State v. Bowden*, 290 N.C. 702, 228 S.E. 2d 414 (1976).

This assignment of error is without merit and is overruled.

[5] Defendant excepts to the following portion of the charge:

> "Members of the jury, one of the principles of law involved in this case involves the law relating to ACTING IN CONCERT. For a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit the crime of murder, each of them is held responsible for the acts of the others done in the commission of the crime of murder.

> \* \* \*

> ". . . If the State has satisfied you from the evidence beyond a reasonable doubt that the defendant, Bobby Ervin Hood acting either by himself or acting together either with Bobby Joe Burns or Isaiah Hood or both of them and either Bobby Ervin Hood himself, or either Bobby Joe Burns or Isaiah Hood acting in concert with Bobby Ervin Hood on May 7th, 1975, unlawfully and with malice shot and killed Herman Lee Philyaw with a firearm and the State has further satisfied you from the evidence beyond a reasonable doubt that the defendant, Bobby Ervin Hood or persons acting in concert with him shot and killed Herman Lee Philyaw with a firearm, such as a shotgun, willfully, in execution of an actual specific

intent to kill formed after premeditation and deliberation, as these terms have been defined to you and that the death of Herman Lee Philyaw was proximately caused by the wound so inflicted, the defendant would be guilty of murder in the first degree."

The defendant argues that the trial court did not give a sufficient explanation of the meaning of "acting in concert." It must be noted here that, on being asked by the trial judge if he requested further instructions, defendant's attorney indicated that he was satisfied with the trial court's instructions.

In *State v. Davis*, 290 N.C. 511, 227 S.E. 2d 97 (1976), we considered a similar charge. There the defendant asserted that the trial court ". . . erred in instructing the jury on 'acting in concert' so as to, in effect, charge the jury that it should convict both defendants if either one is found guilty." Chief Justice Sharp then said:

"The crucial question in this case was the identity of the men who robbed the cash register in Grant's grocery on the night of 28 December 1973. When the charge is construed as a whole we think the jury must have understood the judge to mean that if they were satisfied beyond a reasonable doubt that Davis and Foster were acting together while in the course of or attempt to rob Grant's store, and that either one of them shot and killed Grant both would be guilty of first degree murder, but the issue of the guilt of each defendant was to be considered individually."

In the present case, Bobby Burns testified:

"Bobby Hood said that he would shoot Mr. Philyaw. He said what I was to do. I was supposed to take the .22 I had and shoot through the back windshield and slow him down." This witness further testified that he saw the defendant put a shotgun together that had been dismantled and go behind a tree. He heard the defendant say, "Get ready, here he comes" and heard a loud explosion.

According to this testimony, defendant and witness Burns were "acting in concert." Considering the instruction as a whole the jury must have understood that it would have to find that defendant and others were acting together in planning and ex-

ecuting the crime before it could find that defendant acted in concert with another person. And the jury must have understood from the judge's instruction that if either Burns or defendant shot and killed Mr. Philyaw while acting together, both would be guilty. Furthermore, according to all of the evidence, the defendant actually fired the fatal shot. Hence he could not have been prejudiced by this instruction.

[6] Under this same assignment of error, defendant contends that the trial judge erred in his charge on circumstantial evidence. The defendant does not say wherein the error lies.

As we said in *State v. Beach*, 283 N.C. 261, 196 S.E. 2d 214 (1973): "A general and correct charge as to the intensity or quantum of proof when the State relies wholly or partly on circumstantial evidence is adequate unless the defendant tenders request for a charge on the intensity of proof required for such evidence. [Citations omitted.] When such request is aptly tendered, the trial judge should charge that circumstantial evidence must point unerringly to defendant's guilt and exclude every other reasonable hypothesis." (Citations omitted.)

In the present case, defendant presented no request for instructions. Furthermore, although not required to do so, the trial judge did instruct the jury on circumstantial evidence and concluded by saying: "Do the circumstances lead unerringly to the guilt of the defendant and exclude every other reasonable conclusion except that of guilty? If so, the evidence is sufficient to convict, otherwise, it is not."

This assignment of error is overruled.

[7] Finally, the defendant says the evidence presented by the State is not sufficient to overcome his motion for a verdict of not guilty at the close of all the evidence. Clearly, this assignment is without merit.

On a motion for a directed verdict of not guilty, or for judgment as of nonsuit, the trial judge is required to consider the evidence in the light most favorable to the State, take it as true, and give the State the benefit of every reasonable inference to be drawn therefrom. Regardless of whether the evidence is direct, circumstantial, or both, if there is evidence from which a jury could find that the offense charged has been committed and that the defendant committed it, the motion should be overruled. *State*

*v. McNeil,* 280 N.C. 159, 185 S.E. 2d 156 (1971); *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968).

The testimony of Bobby Burns, coupled with the testimony of Isaiah Hood, was sufficient to overcome defendant's motion for a directed verdict of not guilty.

A careful examination of the record does not disclose error which would justify disturbing the verdict reached or the judgment imposed; hence, in the trial, we find

No error.