STATE OF NORTH CAROLINA v. TONY WILLIAMS AND SAM WILLIAMS

No. 100

(Filed 1 April 1980)

**1. Criminal Law § 113.7— instructions on acting in concert—failure to instruct on aiding and abetting—no error**

The trial court in a murder prosecution properly submitted to the jury the theory of concerted action by the two defendants and did not err in failing to submit the theory of aiding and abetting, since all of the evidence tended to show that defendant son was present at the scene of the crime and was acting together with defendant father pursuant to their common plan or purpose murderously to assault the victim, and that the evidence tended to show that it was the father who actually pulled the trigger did nothing to mitigate the culpability of the son, nor did it change his role to that of an aider and abettor.

**2. Criminal Law § 113.7 — acting in concert—instructions applying law to facts**

From the evidence in a murder prosecution and the court's charge as a whole, the jury must have understood that it would have to find defendant son and his father were acting together in executing the crime before it could find

that defendant son acted in concert, and the jury must have understood from the judge's instructions that, if either defendant son or his father fired a shot and killed the victim while acting together, both would be guilty.

**3. Criminal Law § 117— character evidence incompetent—failure to instruct proper**

In a prosecution of a father and son for murder, there was no merit to the son's contention that, because the trial judge gave instructions on character evidence for the father, his failure to do so for the son was prejudicial, since the testimony offered in the son's behalf, a witness's personal opinion of the son's character rather than his general reputation among a group of people, did not rise to the level of competent character evidence.

DEFENDANTS appeal as a matter of right pursuant to G.S. 7A-27(a) from judgments of life sentence imposed by *Preston, Judge,* at the 11 June 1979 Session of HARNETT County Superior Court. These appeals were docketed and argued as No. 128 at the Fall Term 1979.

Upon indictments, proper in form, defendants, a father (Sam) and son (Tony), were charged with the murder of one Bobby Seaberry. The cases were consolidated for trial.

At trial, evidence for the State tended to show that in September, 1978, the deceased, Bobby Seaberry, shot defendant Tony Williams causing Tony Williams to be hospitalized for some 21 days. Months later, on Saturday, 31 March 1979, defendant Tony Williams was driving his father Sam's car with Sam as a passenger on Old Wire Road in Harnett County, heading toward Bunnlevel. Bobby Seaberry approached the Williams car on the opposite side of the road, riding a motorcycle. Tony Williams swerved his father's car to the left and knocked Bobby Seaberry from his motorcycle. The car came to rest in a ditch on the left-hand side of the road with the motorcycle beneath its front bumper.

Seaberry was observed picking himself up after the impact and running across a field. Witnesses saw defendants Tony and Sam jump from their car and chase him, Tony in front and Sam behind. Sam was carrying "a long gun" which he fired once. Seaberry momentarily stumbled, losing his helmet, but righted himself and ran on, into a patch of woods. Defendants disappeared into the same woods and another shot was heard. Defendants emerged from the woods and walked to the car around which

several people had gathered. These people helped the defendants push the car out of the ditch. Ambulance drivers called to the scene arrived after the defendants had driven off. They found Bobby Seaberry in the woods where defendants were seen chasing him, dead of a shotgun wound to the back.

Defendants testified for themselves and presented several character witnesses. Their testimony was that Sam, not Tony, was driving the car on the day in question. Riding along, they saw a motorcycle in the ditch on the left-hand side of the road and pulled over to see what the problem was. Finding no one around the motorcycle, they got out of their car which then rolled into the ditch. They pushed the car out of the ditch with the help of some people who dropped by and then left the scene, never having seen Bobby Seaberry and knowing nothing of his murder.

The jury found each defendant guilty of second degree murder. Each was sentenced to life imprisonment.

*Attorney General Rufus L. Edmisten by James E. Magner, Jr., Assistant Attorney General, for the State.*

*Robert C. Bryan for the defendant.*

CARLTON, Justice.

Defendant Sam Williams requests that we review the record as a whole for error in his trial. Defendant Tony Williams submits four assignments of error. We have reviewed the record as a whole for both defendants and have carefully examined the four questions defendant Tony Williams brings forward and find no error in either defendant's case.

I.

[1] Defendant Tony Williams, the son, first asserts that the trial court committed error by failing to instruct the jury on the law of "aiding and abetting" as required by the evidence in the case.

In pertinent part, the trial court instructed the jury:

With respect to Tony Williams, for a person to be guilty of a crime, it is not necessary that he, himself, do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit the crime of Sec-

ond Degree Murder, each of them is held responsible for the acts of the other done in the commission of the crime of Second Degree Murder.

Defendant Tony Williams argues that such an instruction was improper because "the theory of the State was that Tony Williams was guilty of murder by virtue of aiding and abetting his father." Thus, defendant Tony Williams contends that the theory of *acting in concert* should never have been given to the jury because all the State's evidence tended to show that his father did the shooting and that he (Tony) committed no act "which forms a part of the offense charged." Defendant relies on the quoted language from *State v. Robinette,* 33 N.C. App. 42, 234 S.E. 2d 28 (1977).

The general common law rule is that a person is not liable for the criminal acts of another if he did not participate in the crimes either directly or indirectly. *State v. Keller,* 268 N.C. 522, 151 S.E. 2d 56 (1966).

A person is a party to an offense, however, if he either (1) actually commits the offense or (2) does some act which forms a part thereof, or (3) if he assists in the actual commission of the offense or of any act which forms part thereof, or (4) directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof. (Numbered parentheses added.)

*State v. Keller, supra* at 526, 151 S.E. 2d at 58; *State v. Spears,* 268 N.C. 303, 150 S.E. 2d 499 (1966); *State v. Burgess,* 245 N.C. 304, 96 S.E. 2d 54 (1957); 22 C.J.S., Criminal Law § 79 (1961).

The only distinction in criminal culpability between one who actually commits the crime and one of the other guilty parties to the offense as described in *Keller, supra,* is the technical difference between being a principal in the first degree and being a principal in the second degree. A principal in the first degree is the person who actually perpetrates the deed and a principal in the second degree is one who is actually or constructively present when the crime is committed and aids and abets another in its commission. *State v. Allison,* 200 N.C. 190, 194, 156 S.E. 547, 549 (1931). The law, however, recognizes no difference between a principal in the first degree and a principal in the second; both are

equally guilty. *State v. Allison, supra; State v. Whitt,* 113 N.C. 716, 18 S.E. 715 (1893).

Defendant contends he should have been charged at the very most as an aider and abettor of his father's crime. The distinction between aiding and abetting and acting in concert, however, is of little significance. Both are equally guilty, *see, e.g., State v. Allison, supra* at 195, 156 S.E. 2d at 550; *State v. Powell,* 168 N.C. 134, 83 S.E. 310 (1914), and are equally punishable.

Furthermore, the jury in this case was properly charged on the issue of acting in concert. Defendant's contention that it is necessary to perform *some act* which forms an *element* of the crime charged in order to be guilty of acting in concert is erroneous. Such has never been the law in this State. Thus, in *State v. Vaden,* 226 N.C. 138, 36 S.E. 2d 913 (1946), a case very similar to the one at bar, three defendants were indicted and tried for the killing of a fourth man in a fight. The evidence tended to show that all of the defendants acted together to bring about the fight and all participated actively although only one of the three was armed with a gun and shot and killed the deceased. This Court held that such evidence was sufficient on motion of nonsuit to show "a concert of action on the part of these defendants which culminated in the death of the deceased," *Id.* at 142, 36 S.E. 2d at 915, and held that the conviction of all three for the killing was proper.

In this Court's most recent explanation of acting in concert, *State v. Joyner,* 297 N.C. 349, 255 S.E. 2d 390 (1979), we defined acting in concert as "to act together in harmony or in conjunction one with another pursuant to a common plan or purpose."

There, a defendant who was present at the gang rape of a victim argued he was not culpable of all the charged crimes because he had not personally participated in some of the many unnatural acts performed on the victim. He asserted that the instruction that he was acting in concert with his fellows as to these certain unnatural acts was in error. This Court, speaking through Justice Exum, overruled this assertion, reasoning:

> It is not . . . necessary for a defendant to do *any particular act* constituting at least part of a crime in order to be convicted of that crime under the concerted action principal so

long as (1) he is present at the scene of the crime *and* (2) the evidence is sufficient to show he is acting together with another who does the acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime. (Numbered parentheses and emphasis added.)

297 N.C. at 357, 255 S.E. 2d at 395. One of the essential elements of acting in concert is that there is evidence of a common plan or purpose.

So here, the charge on concerted action was proper. All of the evidence tended to show that the defendant Tony Williams was present at the scene of the crime and was acting together with his father pursuant to their common plan or purpose to murderously assault the victim. That the evidence tended to show it was Sam who actually pulled the trigger does nothing to mitigate the culpability of Tony, nor does it change his role to that of an aider and abettor. The action of both defendants created one orchestated sequence of events, with both defendants maliciously pursuing and assaulting the deceased.

There is absolutely no showing from the evidence that the defendant Tony Williams merely aided and abetted his father. In this regard the case is clearly distinguishable from *State v. Robinette, supra,* upon which defendant Tony Williams primarily relies. There, the defendant was not present at a breaking and entering but merely drove a car which picked up other participants in the crime at a spot in front of the crime scene. The Court of Appeals, speaking through Judge Parker, held that in such a case, an instruction on acting in concert was erroneous because the defendant was not present at the scene of the crime. Here the evidence overwhelmingly establishes Tony's presence and participation. The trial court correctly submitted to the jury the theory of concerted action by the two defendants and did not err in failing to submit the theory of aiding and abetting. This assignment of error is overruled.

II.

Defendant Tony Williams secondly asserts that the trial court failed to properly instruct the jury that he would not be guilty of murder by aiding and abetting in the crime of murder, unless he knew that Sam Williams intended to assault the deceased and that he, Tony, intended to render aid in the assault. We have held above that the evidence did not warrant a submis-

sion of the charge of aiding and abetting to the jury. This assignment of error is therefore overruled.

## III.

[2] Defendant Tony Williams thirdly argues that in submitting the charge of acting in concert, the trial court failed to apply the facts to the law in that it did not instruct the jury as to what findings of fact would constitute the meaning of acting together with the common purpose of committing the crime of second degree murder.

G.S. 15A-1232 (formerly G.S. 1-180) requires the trial judge to explain the law arising on the evidence. Cases construing the prior statute have held that the law should be applied to the particular facts in evidence and not to a set of hypothetical facts. *State v. Hopper,* 292 N.C. 580, 234 S.E. 2d 580 (1977); *State v. Hollingsworth,* 263 N.C. 158, 139 S.E. 2d 235 (1964); *State v. Campbell,* 251 N.C. 317, 111 S.E. 2d 198 (1959); *State v. Street,* 241 N.C. 689, 86 S.E. 2d 277 (1955).

Defendant Tony Williams argues that the judge's instruction in this trial merely stated general principles of law without an application of the law to the specific facts. Such an instruction, he asserts, is inadequate, citing *State v. Ardrey,* 232 N.C. 721, 62 S.E. 2d 53 (1950).

We do not agree the charge is inadequate. The record reveals the judge charged in part:

> With respect to Tony Williams, for a person to be guilty of a crime, it is not necessary that he, himself, do all of the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit the crime of Second Degree Murder, each of them is held responsible for the acts of the other done in the commission of the crime of Second Degree Murder.

> So, I charge that, if you find from the evidence beyond a reasonable doubt, that on or about the Thirty-First day of March, Nineteen Seventy-Nine, the said Tony Williams, acting either by himself, or acting together with Sam Williams, intentionally and with malice shot the said Bobby Seaberry with a deadly weapon, to wit, a twelve-gauge shotgun,

thereby proximately causing Bobby Seaberry's death, it would be your duty to return a verdict of "guilty of Second Degree Murder."

Other decisions of this Court have approved such an instruction. In *State v. Hood*, 294 N.C. 30, 239 S.E. 2d 802 (1978), defendant was tried along with two others for murder. The evidence tended to show that the defendant's part in the affair was to slow down the victim's truck long enough for a codefendant to shoot the victim. There, the trial judge gave a charge quite similar to the one given in the case at bar:

"Members of the jury, one of the principles of law involved in this case involves the law relating to ACTING IN CONCERT. For a person to be guilty of a crime, it is not necessary that he, himself, do all the acts necessary to constitute the crime. If two or more persons act together with a common purpose to commit the crime of murder, each of them is held responsible for the acts of the others done in the commission of the crime of murder.

\*    \*    \*

". . . If the State has satisfied you from the evidence beyond a reasonable doubt that the defendant, Bobby Ervin Hood acting either by himself or acting together either with Bobby Joe Burns or Isaiah Hood or both of them and either Bobby Ervin Hood himself, or either Bobby Joe Burns or Isaiah Hood acting in concert with Bobby Ervin Hood on May 7th, 1975, unlawfully and with malice shot and killed Herman Lee Philyaw with a firearm and the State has further satisfied you from the evidence beyond a reasonable doubt that the defendant, Bobby Ervin Hood or persons acting in concert with him shot and killed Herman Lee Philyaw with a firearm, such as a shot gun, willfully, in execution of an actual specific intent to kill formed after premeditation and deliberation, as these terms have been defined to you and that the death of Herman Lee Philyaw was proximately caused by the wound so inflicted, the defendant would be guilty of murder in the first degree."

294 N.C. at 42-43, 239 S.E. 2d at 809.

This Court upheld the instruction reasoning that:

According to this testimony, defendant and witness Burns were "acting in concert." Considering the instruction as a whole the jury must have understood that it would have to find that defendant and others were acting together in planning and executing the crime before it could find that defendant acted in concert with another person. And the jury must have understood from the judge's instruction that if either Burns or defendant shot and killed Mr. Philyaw while acting together, both would be guilty.

*Id.* at 243-44, 239 S.E. 2d at 810.

Likewise, in *State v. Watson,* 294 N.C. 159, 240 S.E. 2d 440 (1978), defendant objected to a jury charge of acting in concert where the judge instructed "that if the jury should find that '. . . the defendant, Mr. Watson, another person or persons acting with him . . .' had committed the robbery, it would be the duty of the jury to return a verdict of guilty." *Id.* at 168, 240 S.E. 2d at 447. In *Watson, supra,* the evidence indicated that four men robbed and stabbed a storekeeper. This Court, in overruling the exception to a charge on acting in concert, relied on the general principle that a charge is to be construed as a whole. If, when so construed, it is sufficiently clear that no reasonable cause exists to believe that the jury was misled or misinformed, any exception to it will not be sustained even though the instruction could have been more aptly worded. *State v. Sanders,* 288 N.C. 285, 218 S.E. 2d 352 (1975), *cert. denied,* 423 U.S. 1091, 47 L.Ed. 2d 102, 96 S.Ct. 886 (1976); *State v. Watson, supra* at 168-69, 240 S.E. 2d at 447.

The selfsame principles apply here. Evidence presented at trial was to the effect that Sam and Tony acted together in initiating and carrying out this killing. Considering this evidence and construing the charge as a whole, we believe the jury must have understood that it would have to find the defendant Tony Williams and his father were acting together in executing the crime before it could find that the defendant Tony Williams acted in concert. And the jury must have understood from the judge's instructions that if either defendant or his father fired a shot and killed Bobby Seaberry while acting together, both would be guilty. *See State v. Hood, supra; State v. Davis,* 290 N.C. 511, 227 S.E. 2d 97 (1976). While the charge might have been worded differently as to the codefendants acting pursuant to a common

goal or purpose, the instruction as given was fair and adequate. This assignment of error is overruled.

## IV.

[3] Defendant Tony Williams lastly asserts that the trial judge failed to charge the jury as to the legal effect of the character evidence he introduced. The effect of such an omission, he argues, was to express a judicial opinion in contradiction of G.S. 15A-1222 and G.S. 15A-1232.

The record reveals that both Sam and Tony Williams introduced evidence of character. Tony's evidence consisted of a witness's statement that the witness "had not never seen anything that would indicate that but what [Tony Williams] is a pretty good fellow." The trial judge explained the law as to character evidence on behalf of Sam, but did not instruct the jury about character evidence on behalf of Tony.

At oral argument, defendants' counsel asserted this omission prejudiced not only Tony but Sam as well because Sam relied on Tony's testimony to corroborate his own story. Anything which tended to undermine Tony's character, then, was as harmful to the father as to the son.

Character is a subordinate feature of a case and a defendant must request a character instruction before he can allege error in a court's failure to charge the jury. *State v. Burell,* 252 N.C. 115, 113 S.E. 2d 16 (1960); *State v. Bridgers,* 233 N.C. 577, 64 S.E. 2d 867 (1951); *State v. Jones,* 35 N.C. App. 388, 241 S.E. 2d 523 (1978).

The record reveals that neither Tony nor Sam Williams made requests for jury instructions on character evidence. Tony, however, argues that because the trial court gave character instructions for Sam, his failure to do so for Tony was prejudicial to Tony. With this we cannot agree for the simple reason that the testimony offered in Tony's behalf did not rise to the level of competent character evidence.

A criminal defendant is always permitted to offer evidence of his good character as substantive evidence of his guilt or innocence. *State v. Denny,* 294 N.C. 294, 240 S.E. 2d 437 (1978); *State v. Davis,* 231 N.C. 664, 58 S.E. 2d 355 (1950); *State v. Moore,* 185 N.C. 637, 116 S.E. 161 (1923); 1 Stansbury, North Carolina

Evidence § 104 (Brandis rev. ed. 1973); McCormick, Evidence § 191 (2d ed. 1972). However, it is well settled in this jurisdiction that such character evidence cannot be a witness's personal opinion, *State v. Denny, supra; Johnson v. Massengill,* 280 N.C. 376, 186 S.E. 2d 168 (1972); Stansbury, *supra* at § 110, but must be testimony concerning "his *general* reputation, held by an appreciable group of people who have had adequate basis upon which to form their opinion." *State v. McEachern,* 283 N.C. 57, 67, 194 S.E. 2d 787, 793-94 (1973) (Emphasis in original). *Accord, State v. Denny, supra.*

Testimony offered in Tony's behalf did not contemplate his general reputation among a group of people, but gave only the witness's personal opinion of Tony's character. Such evidence is not competent character evidence and the trial judge's failure to instruct the jury on this evidence is accordingly not error. This assignment of error is overruled as to both defendants.

We have also reviewed the record as a whole and find no error with respect to those portions of the trial affecting the defendant Sam Williams. Thus in the trial below we find as to defendant Sam Williams and defendant Tony Williams

No error.