STATE v. JULIUS MOORE.

(Filed 14 March, 1923.)

**1. Homicide—Criminal Law—Malice—Evidence—Appeal and Error.**

The issue of murder in the second degree involving the element of malice, and on the trial there is evidence that the defendant killed the deceased at a dance in a warehouse where the deceased and another were disturbing the dance by a quarrel, and there is further evidence that the prisoner killed the deceased in self-defense, requiring that the defendant should have been without default in provoking a quarrel with the deceased, it is competent for the defendant to show that he was in charge of the warehouse for the owners to protect it and preserve order, and that he interfered with the quarrel in the performance of a duty, in order to rebut the idea that he was in fault in bringing on the fight, and the element of malice involved in the issue; and where the verdict is guilty upon this issue, the exclusion of this evidence by the court constitutes reversible error.

2. **Homicide — Criminal Law — Evidence—Character—Substantive Evidence—Appeal and Error.**

> Where, upon the trial of a homicide, there is evidence of the bad character of the prosecuting witness, and of the good character of the defendant, a charge of the court that the jury should consider this evidence in relation to the credibility of the testimony of each, constitutes reversible error in confining the evidence of the defendant's good character to the *credibility of his testimony, and excluding it as substantive evidence on* the issues.

Appeal by defendant from *Grady, J.,* at January Criminal Term, 1923, of Pitt.

Indictment for murder. The State did not insist on a conviction of murder in the first degree, and "defendant was put on trial for murder in the second degree, or manslaughter."

There was conviction of murder in the second degree, and from judgment on the verdict defendant excepted and appealed, assigning errors.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*
*Albion Dunn for defendant.*

Hoke, J. There was evidence on the part of the State tending to show that on the night of 24 December, 1920, there was a dance for colored people in the warehouse of J. N. Gorman in said county, attended by deceased, and the prisoner and others. That about 8:30 p. m. there was a fuss going on between Rosa Davis and her husband, and during this altercation the deceased and the prisoner became also involved in a quarrel, and prisoner shot and killed the deceased. That fatal shot was fired when the deceased was down and helpless, or just as he was rising up, and the killing was without any adequate provocation or legal excuse.

There was evidence for defendant tending to show that he was an employee of Mr. J. N. Gorman, who had let them have the warehouse for the dance. That hearing the quarrel between Davis and his wife over near the piano, defendant went over and spoke to the persons there with the view of quieting the fuss. That Mr. Gorman had the side doors of the warehouse fastened, and James Grimes, who is said to have started the row, and his brother-in-law, Arthur Marshburn, and principal witness for the State, asked to get out by the side doors. That defendant told them they would have to go out by the front door. That Grimes took offense at witness's speech and asked what in the hell he had to do with it, and said: "I'll beat your damn head off. You think you are something because you have got charge of this warehouse." And Marshburn, the brother-in-law, said: "Rush him, James, and cut his damn throat." That James came on defendant with a knife, and that defendant backed

away as much as 70 or 75 feet and shot once into the floor in front of deceased in the hope of stopping him. He coming on, deceased and defendant came together and both fell. That defendant jumped loose from deceased and was cut on the finger with the knife, and as he came again on, defendant shot and killed deceased, and that it was necessary to do it to save himself. That the pistol used was one belonging to the warehouse, and had been given to defendant by Mr. Gorman something like half an hour before the homicide.

In the course of defendant's evidence he was asked as to what were his duties as employee of Mr. Gorman. On objection the question was excluded and exception noted, the case stating that the answer would have been that defendant, as employee, was watchman of Mr. Gorman's warehouse. Again, defendant proposed to show that during the evening, and not long before the killing, Mr. S. G. Gorman, brother of the owner, and "acting in the interest of the warehouse, being down there, had told defendant to take care of the warehouse and to see that no fireworks were shot, and to keep down all disorder." On objection, this evidence was also excluded, and defendant excepted, and in our opinion both of these exceptions must be sustained. The court in its charge had very carefully and correctly impressed upon the jury the principle that defendant could not maintain the position of a perfect self-defense if he was at fault in provoking the difficulty. *S. v. Finch,* 177 N. C., 599-602, and *S. v. Kennedy,* 169 N. C., 327. And in our view this proposed evidence was competent not only as an aid to the jury in forming a proper concept of the conditions presented, but also as tending to negative the element of malice involved in the offense of murder in the second degree, and as presenting defendant's claim that in approaching the people engaged in a quarrel and asking them to desist he had reasonable ground to believe that he was acting within the range of duties rightfully incumbent upon him. *S. v. Holliday,* 111 L. Rep., 47.

Again, there was evidence offered by defendant to the effect that the character of Arthur Marshburn, the principal witness for the State, was bad, and that the character of the defendant was good, and in the charge, speaking to this testimony, and the only reference made to it, the court instructed the jury as follows: "Evidence has been offered, gentlemen of the jury, tending to show that the character of the witness Marshburn is bad, and that the character of the defendant is good. That testimony should be considered by you in placing such credit upon the testimony of these two men as you may see fit and proper to place upon it, after considering the evidence as to their general character."

It is fully recognized in this jurisdiction that in an indictment for crime, a defendant may offer evidence of his good character and have same considered as substantive testimony on the issue of his guilt or

innocence. And where in such case a defendant has testified in his own behalf and evidence of his good character is received from him, it may be considered both as affecting the credibility of his testimony and as substantive evidence on the issue. *In re McKay,* 183 N. C., 226-228; *S. v. Morse,* 171 N. C., 777; *S. v. Cloninger,* 149 N. C., 578; *S. v. Traylor,* 121 N. C., 674; *S. v. Hice,* 117 N. C., 782.

From the language and mere natural meaning of the above excerpt of his Honor's charge, and from the connection in which it appears, we think the jury may very well have inferred that in reference to this evidence of the good character of the defendant they could only consider it as affecting the credibility of his testimony, and he was thus deprived of the principle that it was also substantive evidence on the issue of his guilt or innocence. For the errors indicated, we are of opinion that defendant is entitled to a new trial of the cause, and it is so ordered.

New trial.