STATE OF NORTH CAROLINA v. CHESTER WALLACE

No. 8114SC287

(Filed 20 October 1981)

1. **Criminal Law § 117— jury instructions on prior convictions—failure to link limiting instruction to all prior convictions**

 The trial court committed reversible error when it instructed the jury it could not consider the defendant's prior *non*-larceny related convictions as substantive evidence of his guilt, but failed to instruct the jury with respect to defendant's larceny-related convictions. If the trial court undertakes to name or list the previous convictions, it must state every category of prior convictions supported by the evidence so that the jury will know the limiting instruction applies to all the prior convictions contained in the record.

2. **Constitutional Law § 74— cross-examination and rebuttal of alibi defense—no violation of right against self-incrimination**

 Where defendant on cross-examination testified that, when he was first questioned concerning the crime charged, he told the officer of his alibi defense, his constitutional right against self-incrimination was not violated by either the cross-examination or by the rebuttal testimony of the officer concerning defendant's failure to have mentioned his alibi defense when he was questioned following his arrest. "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense . . . ."

APPEAL by defendant from *Martin, Judge.* Judgment entered 11 December 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 18 September 1981.

Defendant was convicted of common law robbery and sentenced to two years in prison as a committed youthful offender. At trial, the prosecuting witness, Catherine Sims, testified that as she was leaving the Durham Seafood Market, defendant ran into her, grabbed her purse, and fled. Mrs. Sims also testified that she had seen and had recognized defendant, who was sitting on a stoop in front of the seafood market, before she went into the seafood market, but that she did not know his name. Detective Thomas Hester testified that on 12 February 1980, over a month after the purse-snatching, he showed Mrs. Sims seven photographs and that Mrs. Sims picked out the picture of the defendant as the person who took her purse.

Defendant testified that he hurt his knee playing basketball on the day Mrs. Sims was robbed. Both he and his mother presented alibi evidence that he was at home nursing his hurt

knee at the time of the robbery. The defendant further testified, on cross examination, that he told the arresting officer that his leg was hurt and that he had not been able to move at the time of the robbery.

Detective Hester testified on rebuttal for the State that defendant did not mention hurting his leg and was not limping when he was arrested.

*Attorney General Edmisten, by Assistant Attorney General Richard L. Griffin, for the State.*

*Appellate Defender Project for North Carolina, by Adam Stein and James H. Gold, for defendant appellant.*

BECTON, Judge.

The issues on appeal are whether the court erred in admitting testimony of what defendant did or did not tell the arresting officer concerning his alibi defense, whether the court erred in failing to instruct the jury on eye-witness identification testimony, and whether the court erred in its jury instructions by failing to tell the jury about defendant's prior larceny-related juvenile convictions.

I

[1] Having determined that the defendant is entitled to a new trial because the trial court failed to mention that the defendant's prior larceny-related convictions could *not* be considered as substantive evidence, we address the issues in reverse order. Defendant testified on direct examination that he had been convicted of misdemeanor assault, driving a motorbike without a helmet, and malicious injury to personal property. On cross examination, the defendant testified that as a juvenile, he had been convicted of taking a bicycle and breaking and entering. Defendant also gave testimony suggesting that he had been convicted of at least three other larceny-related crimes as a juvenile.[1]

---

1. In an effort to further impeach the defendant with his prior juvenile convictions, the State, on cross examination, asked the question, and received the answer that follow:

Q. And you have in fact been convicted of stealing something at least three times when you were under 16?

With reference to the defendant's prior convictions, the trial court gave the following instructions to the jury:

There has also been evidence in this case through the defendant that at an earlier time the *defendant has been convicted of misdemeanors of assault and injury to property and traffic offenses.* I instruct you that you may consider this evidence for one purpose only. If considering the nature of those offenses you believe that the fact that he may have been convicted of them bears upon his truthfulness, then you may consider it together with all of the other facts and circumstances bearing upon his truthfulness in deciding whether you will believe or disbelieve his other testimony at this trial. Except as it may bear on this decision, it may not be considered by you in any other manner. It is not evidence of his guilt or innocence in this case, and you may not convict him in this case based upon something that he may have done in the past. [Emphasis added.]

Defendant argues that this instruction was misleading and incomplete because the trial court, in listing the defendant's prior convictions, failed to mention that the defendant had been previously convicted of larceny-related offenses.

The State concedes that a defendant can be impeached with his juvenile convictions.[2] The State also implicitly concedes, by quoting *State v. Bridgers*, 233 N.C. 577, 64 S.E. 2d 867 (1951), that the following is a correct statement of the law in North Carolina. "[W]hen the trial court undertakes to instruct upon [a subordinate feature of the case], it then becomes [it's] duty, without special re-

---

A. Naw. I was with scme people that stole something, and they said "You were with them," and I said "Yes, I was with them at the time."

*I do not deny that I was convicted.* I was there so I said that I did it. [Emphasis added.]

2. The State concedes that under prior G.S. 7A-287, now repealed, a juvenile's conviction was considered a conviction for impeachment purposes. *State v. Alexander,* 279 N.C. 527, 535, 184 S.E. 2d 274 [280] (1971). Under new Article 54, Chapter 7A, N.C. General Statutes, apparently the same result will occur in that, while total expunction of a juvenile's criminal record can occur; G.S. 7A-677(b) provides that in court proceedings "the juvenile may be ordered to testify with respect to whether he was adjudicated delinquent." Accordingly, the State will not argue that a juvenile conviction is not considered as a conviction for impeachment purposes. State's Brief, pp. 11-12.

quest, to expound and explain correctly the law applicable to its different phases." *Id.* at 579, 64 S.E. 2d at 869. Having made these concessions, the State asserts, without argument, (1) that "[t]he failure to mention the juvenile convictions is an omission of fact, not of law;" (2) that the factual omission "is not considered material" since it was "to a collateral aspect of the case rather than to a substantive feature" of the case; and (3) "that there was no need for the court to mention each conviction when instructing as to the law." We disagree with the State.

First, the trial court not only made a factual omission, but it also failed to give a complete and correct instruction on the applicable law as is required by numerous cases. *State v. Wortham*, 240 N.C. 132, 81 S.E. 2d 254 (1954); *State v. Bridgers; State v. Hale*, 231 N.C. 412, 57 S.E. 2d 322 (1950); *State v. Moore*, 185 N.C. 637, 116 S.E. 161 (1923); *State v. Jones*, 35 N.C. App. 388, 241 S.E. 2d 523 (1978); *State v. Adams*, 11 N.C. App. 420, 421, 181 S.E. 2d 194, 195 (1971). In *State v. Hale*, a breaking or entering and larceny case, the following instructions were given the jury:

> Now the court charges you that the State has offered two witnesses in this case who are accomplices within the meaning of the law. . . . The State insists and contends . . . that their testimony is supported by other facts and circumstances in the case, and that their testimony is not unsupported and does not go to your hands for your consideration as unsupported testimony of an accomplice. . . . Our Court has said this as to the law on accomplices: 'The unsupported testimony of an accomplice, while it should be received by the jury with caution, if it produces convincing proof of the defendant's guilt, is sufficient to sustain a conviction.' That is as to the unsupported testimony of accomplices.
>
> . . . Now, when the testimony is unsupported, the court charges you that it is your duty to scrutinize such testimony carefully and with care, great care, to see whether or not they are telling you the truth.

*Id.* at 413, 57 S.E. 2d at 323. Hale took exception to the last sentence of the instructions quoted above contending that it carried "the clear inference that if such testimony be supported . . . it is not to be so scrutinized." *Id.* For failure of the trial court to give a complete and correct instruction of the applicable law, the

*Hale* court ordered a new trial, saying: "The charge is susceptible of the interpretation, and we think the jury must have so understood it, that if the testimony of the accomplices were supported by the evidence of Ann Lumley, as the State contended, the rule of scrutiny would not apply." *Id.* at 414, 57 S.E. 2d at 323. In the case *sub judice*, since the trial court undertook to give instructions on defendant's prior convictions; it was obligated to tell the jury that the larceny convictions could not be considered as substantive evidence.

Second, the State incorrectly uses the terms "substantive feature of the case" and "substantive evidence" interchangeably and, therefore, erroneously concludes that the "factual omission" was collateral and that it need not be mentioned. Certain types of evidence, although a subordinate feature of a case, can be considered as "substantive evidence." For example, in *State v. Wortham*, 240 N.C. 132, 81 S.E. 2d 254 (1954) and *State v. Jones*, 35 N.C. App. 388, 241 S.E. 2d 523 (1978), our Courts held that character evidence, although a subordinate feature of a case, is considered not only as it bears on credibility but also as substantive evidence on the question of guilt or innocence. In *Wortham*, the North Carolina Supreme Court ordered a new trial because the trial court instructed the jury that it could consider evidence of the defendant's good character as bearing on his credibility without additionally instructing that such evidence could also be considered as substantive evidence on the issue of guilt or innocence. This Court in *Jones* found reversible error when the trial court instructed the jury that character evidence offered on the defendant's behalf could be considered as substantive evidence without additionally instructing that it could also be considered as bearing on defendant's credibility. In neither *Wortham* nor *Jones* was the trial court required to give any instructions on character evidence, a subordinate feature of the case. New trials were ordered in each case, however, because the trial court failed to give a complete and correct instruction on the applicable law resulting in harm to the defendants.

Also, it should be remembered that there are circumstances, not appearing in this case, when prior criminal acts may be considered by a jury as substantive evidence. *State v. McClain*, 240 N.C. 171, 81 S.E. 2d 364 (1954); 1 Stansbury's N.C. Evidence § 92 (Brandis rev. 1973). *See* N.C.P.I.—Crim. 104.15 (1970).

In this case, by only listing the offenses that were *dissimilar* to the offense with which the defendant was charged (common law robbery) the trial court may have left, albeit unintentionally, the impression that the defendant's prior larceny convictions could be considered as substantive evidence of his guilt because he was being tried for stealing a purse. As pointed out by the defendant, Chief Justice Warren Burger, while a judge on the Federal Court of Appeals, noted the danger of prejudice that arises in admitting evidence of a prior conviction which is for substantially the same conduct for which the defendant is on trial:

> A special and even more difficult problem arises when the prior conviction is for the same or substantially the same conduct for which the accused is on trial. Where multiple convictions of various kinds can be shown, strong reasons arise for excluding those which are for the same crime because of the inevitable pressure on lay jurors to believe that "if he did it before he probably did so this time."

*Gordon v. United States*, 383 F. 2d 936, 940 (D.C. Cir. 1967). The facts in this case are more compelling than the facts in *Gordon*. Here, the court specifically instructed the jury that it could not consider the defendant's prior *non-larceny* related convictions as substantive evidence of his guilt, but failed similarly to instruct the jury with respect to defendant's larceny-related convictions.

For the benefit of the trial bench and bar, it should be stated that the trial judge is not required to name or list the prior convictions of a defendant in charging the jury on how they shall consider such evidence. It would be proper for the trial judge to commence this instruction: "Evidence has been produced tending to show that defendant has previously been convicted of [a] [several] criminal charge[s]." If the trial court undertakes to name or list the previous convictions, however, it must, at least, state every category of prior convictions supported by the evidence so that the jury will know that the limiting instruction applies to all the prior convictions contained in the record. Fairness to the defendant may indicate that the trial judge should not list the prior convictions, especially if defendant has a long prior criminal record.

It can be argued that the failure to list the larceny convictions in the limiting instruction could be interpreted by the jury

to mean that there is no credible evidence in the case that defendant has been previously convicted of larceny. However, the jury could reason that the limiting instruction only applied to the named criminal convictions, leaving the jury cast adrift without guidance as to how to consider the prior larceny convictions, or even to infer that they should be treated as substantive evidence.

The failure by a trial judge, in giving the limiting instruction, to name or list all of the prior convictions supported by the evidence does not necessarily result in prejudicial error. Whether prejudicial error results depends upon the facts and circumstances of each case. To warrant a new trial it should be made to appear that the error complained of was material and prejudicial to defendant's rights and that a different result would have likely ensued. *State v. Sanders*, 276 N.C. 598, 174 S.E. 2d 487 (1970), *death sentence vacated*, 403 U.S. 948, 29 L.Ed. 2d 860, 91 S.Ct. 2290 (1971).

The State's case rested entirely on the identification of a single witness, and the defendant presented an alibi defense. The error here cannot be considered harmless. *See State v. Jones.* The defendant is, therefore, entitled to a new trial.

II

Defendant next contends that the trial court erred in failing to instruct the jury on eyewitness identification testimony even though he failed to request such an instruction. As defendant is free to request an appropriate eyewitness identification testimony instruction at his retrial, it is not necessary to discuss this assignment of error.

III

[2] The issue we now discuss is likely to arise again at retrial. Defendant phrases it thusly: "The defendant's right against self-incrimination was violated by the cross examination of the defendant and the rebuttal testimony of Detective Hester concerning the defendant's alleged failure to have mentioned his alibi defense when he was questioned following his arrest." We disagree.

This is not a case in which the State uses an accused's silence at the time of his arrest or interrogation to impeach him even

State v. Wallace

though the accused was given *Miranda* warnings. Clearly, that would be a violation of the due process clause of the Fourteenth Amendment. *See Doyle v. Ohio*, 426 U.S. 610, 49 L.Ed. 2d 91, 96 S.Ct. 2240 (1976). As stated in *State v. Lane*, 301 N.C. 382, 384, 271 S.E. 2d 273, 275 (1980), it would be "fundamentally unfair to impeach defendants concerning their post-arrest silence after they had been impliedly assured through the *Miranda* warning that their silence would not result in any penalty." In this case, defendant testified, asserting an alibi defense. On cross examination, defendant was asked whether he had told the arresting officer of his alibi. Significantly, defendant replied that he specifically told the arresting officer of his alibi. Thus, it is not defendant's silence but his "non-silence" that is important here.[3]

We do not believe defendant's constitutional right against self-incrimination was violated on the facts of this case. Even if we thought otherwise, we are compelled by our factual analysis to resolve this issue against defendant. *State v. Lane*, on which defendant relies, is distinguishable. In *Lane*, the defendant was charged with the sale of heroin. After his arrest and while the indictments were being read to him, the defendant stated, "Hell, I sold heroin before, but I didn't sell heroin to this person." At trial, the defendant offered an alibi defense that he was in a different city at the time of the alleged sale. On cross examination, he was asked whether he had related his alibi defense to police prior to trial. In *Lane*, the Court noted that a prior statement is admissible for impeachment purposes if the prior statement fails to mention a material circumstance presently testified to which would have been natural to mention in the prior statement. The *Lane* Court held, however, that it would *not* be natural for the defendant to have mentioned his alibi defense when he denied having made the heroin sale at the time the indictment was read to him, and that the cross examination was, therefore, improper.

The indictment charged that on 4 April 1979, some twenty-one days prior to the date of the reading of the indictment, defendant sold heroin to police officer Walker. It was natural

3. Although the record suggests that defendant "signed a waiver of his *Miranda* rights," we do not suggest that a defendant's silence can be used against him when, although he signs a waiver of his *Miranda* rights, he nevertheless decides to exercise his constitutional right to remain silent.

for defendant to know whether he had sold drugs to a named person and spontaneously to deny having done so. In our opinion it would not be natural for a person, particularly under the circumstances present in this case, to know where he was on a given date some twenty-one days prior thereto. It is a matter of common knowledge that the average person cannot, *eo instanti*, remember where he was on a given date one, two or three weeks in the past without some investigation and substantiation from sources other than his ability of instant recall.

301 N.C. at 386, 271 S.E. 2d at 276. The *Lane* Court found that the cross examination of the defendant left a strong inference with the jury that the defendant's alibi defense was an after-the-fact creation. That problem is not present in the case *sub judice*. Here, the defendant testified that when he was first questioned — approximately 35 days after Ms. Sims' purse was stolen — he told the officer of his alibi defense. That ends the *Lane* inquiry, since, according to defendant's testimony, his alibi *did* flow "naturally" during interrogation.

Granted, the credibility of the defendant was damaged by the rebuttal testimony. That was the price he had to pay for his assertion.

Having voluntarily taken the stand, petitioner was under an obligation to speak truthfully and accurately, and the prosecution here did no more than utilize traditional truth-testing devices of the adversary process. Had inconsistent statements been made by the accused to some third person, it could hardly be contended that the conflict could not be laid before the jury by way of cross examination and impeachment.

The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances. We hold, therefore, that petitioner's credibility was appropriately impeached by the use of his earlier conflicting statements.

*Harris v. New York*, 401 U.S. 222, 225-26, 28 L.Ed. 2d 1, 4-5, 91 S.Ct. 643, 645-46 (1971).

For the reasons set forth in Part I of this opinion, we grant defendant a

New trial.

Judge MARTIN (R. M.) and Judge MARTIN (H. C.) concur.